WESTERN WISCONSIN WATER, INC. d/b/a La Crosse
Premium Water, Plaintiff-Appellant,

v.

QUALITY BEVERAGES OF WISCONSIN, INC. d/b/a JP
Hering Company, Jeffrey J. Welter, Acuity,
a mutual insurance company, Crystal Canyon
Bottled Water and Stephen Welter, Defendants,

AUTO OWNERS INSURANCE COMPANY,
Defendant-Respondent-Cross-Appellant,

CRYSTAL CANYON, INC. and Jonathan Swanson,
Defendants-Third-Party
Plaintiffs-Respondents-Cross-Respondents,

v.

Jeff SCHAITEL, Michael Burns and Brian Elder,
Third-Party Defendants.

Court of Appeals

No. 2006AP1029. *Submitted on briefs April 17, 2007.*
*—Decided July 25, 2007.*

2007 WI App 188

(Also reported in 738 N.W.2d 114.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Brian E. Butler* and *Jonathan G. Evenson* of *Stafford Rosenbaum, LLP*, Madison.

On behalf of the defendant-respondent-cross-appellant, the cause was submitted on the briefs of *Mark A. Pilney* of *Reding & Pilney, PLLP* of Lake Elmo, Minnesota.

On behalf of the defendants-third-party plaintiffs-respondents-cross-respondents, the cause was submitted on the briefs of *Michael L. Stoker* and *Cheryl M. Gill* of *Johns, Flaherty & Collins, S.C.*, LaCrosse and *Arthur E. Kurtz* and *Andrew J. Clarkowski* of *Axley Brynelson, LL.*, Madison.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

¶ 1. SNYDER, P.J. Western Wisconsin Water, Inc., d/b/a La Crosse Premium Water (Western) appeals from a judgment dismissing its claims for trademark infringement against Crystal Canyon, Inc., and its president, Jonathan Swanson. The matter was tried to a jury, which held in favor of Western. Following motions after the verdict, the circuit court judge held that there was insufficient evidence to support the jury's finding of causation. The court changed the verdict and dismissed Western's trademark infringement claim with prejudice. Western contends that credible evidence was presented to support the jury's finding and, therefore, the court should have let the verdict stand. We agree. We reverse and remand the case for the circuit court to reinstate the jury verdict and, further, to address Crystal Canyon's motion to remit the damage award.

¶ 2. The circuit court, anticipating an appeal, also entered a declaratory judgment addressing insurance coverage. The court held that Auto Owners Insurance Company's comprehensive general liability policy provided coverage to Crystal Canyon for trademark infringement damages and punitive damages. Auto Owners filed a cross-appeal, asking for review of the declaratory judgment in the event we reinstated the jury verdict. Auto Owners contends that the circuit court erred in deciding that coverage existed and in determining that the "known falsity" exclusion in the policy did not apply. We agree with the circuit court's analysis and affirm the declaratory judgment.

## BACKGROUND

¶ 3. Western has been in the business of bottling and selling La Crosse Premium Water in five-gallon containers used in water coolers since 1991. In 1997, Western registered its "La Crosse Premium Water"

trademark with the United States Patent and Trademark Office. It has been advertising and allowing its authorized distributors to advertise using this trademark for more than ten years.

¶ 4. In 1997, Western was acting as its own distributor in La Crosse and the surrounding area. That year, however, it decided to sell its distribution business to Quality Beverages of Wisconsin, Inc., d/b/a JP Hering Company (Quality Beverages). As a result, Western authorized Quality Beverages to use the La Crosse Premium Water logo. Quality Beverages used the logo on its delivery trucks and on the uniforms of its truck drivers. Also, the logo appeared on the label of the five-gallon water bottles that Quality Beverages sold to customers.

¶ 5. The distributorship contract also gave Western the right to re-purchase the business if Quality Beverages wished to sell it. However, in 2001, Quality Beverages sold the La Crosse Premium Water distributorship business to Crystal Canyon. Crystal Canyon sells its own five-gallon water bottles in direct competition with Western. As part of its purchase of Quality Beverages' assets, Crystal Canyon acquired the delivery trucks and driver uniforms that Quality Beverages had used to distribute Western's product for the past four years. Also, Crystal Canyon hired some of the delivery truck drivers who had worked for Quality Beverages.

¶ 6. In November 2001, Crystal Canyon began making deliveries using the trucks and uniforms bearing the La Crosse Premium Water logo. As part of the purchase agreement with Quality Beverages, Crystal Canyon acquired a supply of La Crosse Premium Water, which it then sold to customers. Crystal Canyon made customer calls using La Crosse Premium Water trucks

223

and uniforms for six weeks, despite demands by Western that they stop using its trademark.

¶ 7. Western decided to start a new distributorship business and attempted to regain a significant portion of the customer base that had been served by Quality Beverages as a La Crosse Premium Water distributor. Ultimately, Western recovered only 295 of the approximately 1800 former Quality Beverages accounts.

¶ 8. Western sued Crystal Canyon for conspiracy to injure business reputation, fraudulent misrepresentation, common law trademark infringement, and tortious interference with a contract.[1] The circuit court granted summary judgment in favor of Crystal Canyon and Swanson, and Western appealed. On appeal, we affirmed in part, reversed in part, and remanded the matter for further proceedings. *See Western Wisconsin Water, Inc. v. Quality Beverages of Wisconsin, Inc.*, No. 2003AP2903, unpublished slip op. (Wis. Ct. App. Feb. 3, 2005). The only surviving causes of action on remand were trademark infringement and tortious interference with a contract. The jury found that Crystal Canyon and Swanson were not liable for tortious interference, but concluded that Crystal Canyon was liable for damages, including punitive damages, for trademark infringement.

¶ 9. Crystal Canyon brought a post verdict motion for remitittur or, in the alternative, for a new trial. It moved the court to remit the compensatory damages from $336,000 to $10,000 and the punitive damages from $100,000 to zero. Crystal Canyon argued that the evidence was insufficient to support the verdict because

---

[1] Western's breach of contract claim against Quality Beverages was ultimately litigated in federal bankruptcy court and is no longer part of this case.

Western had not established causation and, as a result, the damage award was speculative. The circuit court construed Crystal Canyon's motion as a request to change the jury's verdict on the causation question from "Yes" to "No" and granted the request. Absent causation, the issue of damages was moot. The court dismissed Western's trademark infringement claim with prejudice.

¶ 10. Anticipating an appeal, Auto Owners also moved for a declaratory judgment on the issue of coverage. It argued that the damages awarded by the jury were not covered by the commercial general liability policy issued to Crystal Canyon or, in the alternative, that the damages fell under a policy exclusion. The circuit court disagreed, holding that the insuring agreement was satisfied and that no exclusions applied.

## DISCUSSION

*Jury Verdict on Trademark Infringement*

¶ 11. In Wisconsin, a claim for trademark infringement requires the proponent to show: (1) that a designation meets the definition of trademark, and (2) that the defendant's use of a similar designation is likely to cause confusion. *See Madison Reprographics, Inc. v. Cook's Reprographics, Inc.*, 203 Wis. 2d 226, 234–35, 552 N.W.2d 440 (Ct. App. 1996). The primary question on appeal is whether the circuit court improperly changed the jury's verdict on the question of causation. The special verdict first asked the jury whether Crystal Canyon infringed on Western's trademark and the jury answered "Yes." The jury was then asked, "Was Crystal Canyon's infringement a cause of

damages to Western?" The jury answered "Yes." The verdict also asked the jury, "Did Crystal Canyon's trademark infringement contribute to customer confusion?" Again, the jury answered "Yes."

¶ 12. At the post verdict motion hearing, the court stated that Crystal Canyon's motion was "not really a motion to remit. It's a motion to change the jury's verdict on causation." The court granted the motion. The court's decision addressed whether Crystal Canyon's use of the trademark-bearing trucks and uniforms caused customer confusion. It reasoned that the jury was required to speculate that one customer's testimony regarding confusion could be generalized to "that of the thousand or so other customers which [Western] was not able to regain or retain."

¶ 13. When the circuit court decides as a matter of law that there is insufficient evidence to uphold the jury's finding of causation, this presents a question of law that we review de novo. *See Walter v. Cessna Aircraft Co.*, 121 Wis. 2d 221, 231, 358 N.W.2d 816 (Ct. App. 1984). In reviewing the sufficiency of evidence on appeal, we view the evidence in the light most favorable to the jury's verdict, and we will sustain the jury's verdict if there is any credible evidence "under any reasonable view, that leads to an inference supporting the jury's finding." *Morden v. Continental AG*, 2000 WI 51, ¶¶ 38–39, 235 Wis. 2d 325, 611 N.W.2d 659. We search the record for credible evidence to uphold the jury's verdict, not for evidence to support a verdict that the jury could have reached but did not. *Id.*, ¶ 39. This standard applies "both to the circuit court and to 'an appellate court on review of the trial court's determination' of the motion." *Weiss v. United Fire & Cas. Co.*, 197 Wis. 2d 365, 388, 541 N.W.2d 753 (1995). Having in-

structed the jury on causation, the circuit court was required to uphold the jury's finding if there was "any credible evidence" to support it. *See Morden,* 235 Wis. 2d 325, ¶ 38.

¶ 14. We begin by reviewing the type of evidence required to prove causation. In Wisconsin, causation is demonstrated under the "substantial factor test." *See* WIS JI—CIVIL 1500 (2006). Conduct need not be the sole factor causing the damage, but only a substantial factor. Next, we observe that a trademark infringement claim ordinarily requires proof that some customers have actually been confused or deceived. *See* RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 36 cmt. i (1995). However, courts have recognized that direct proof of confusion is often unavailable. *See, e.g., First Wis. Nat'l Bank of Milwaukee v. Wichman,* 85 Wis. 2d 54, 67, 270 N.W.2d 168 (1978); *U-Haul Int'l, Inc. v. Jartran, Inc.,* 793 F.2d 1034, 1041 (9th Cir. 1986). Thus, where a party can show actual confusion, such evidence is entitled to substantial weight. *See Source Servs. Corp. v. Source Telecomputing Corp.,* 635 F. Supp. 600, 612 (N.D. Ill. 1986).

¶ 15. Western's most persuasive evidence came from a customer named Mary Jo Fish. She testified that she regularly purchased La Crosse Premium Water, but had observed Crystal Canyon's use of the La Crosse Premium Water logo on their trucks and uniforms. She stated that she purchased bottled water from them thinking that she would be receiving La Crosse Premium Water. She later discovered that she was receiving Crystal Canyon water. Upon further investigation, Fish learned that the only way she would be able to receive La Crosse Premium Water again would be to order directly from Western, which she chose to do. Fish's testimony shows actual confusion on the part of a Western cus-

tomer and that the confusion was caused by Crystal Canyon's unauthorized use of Western's trademarked logo.[2]

¶ 16. Another La Crosse Premium Water customer, Shelly Wynia, testified that she believed that her company could still receive La Crosse Premium Water even after the Quality Beverages distributorship was sold to Crystal Canyon. She testified that she was confused about the distinction between Crystal Canyon and La Crosse Premium Water, and that the distinction blurred during "a very confusing several months." Yet another customer, Carol Faulkner, stated that it was her understanding that "JP Hering and Crystal Canyon combined; and yes, as far as I knew, [Crystal Canyon] bought out La Crosse Premium Water." Such testimony by customers is entitled to substantial weight. *See id.* (actual confusion of customers is worthy of substantial weight).

¶ 17. Western also offered the testimony of Cathy Durham, an expert in business valuation and damage analysis. Durham testified that, as a result of Crystal Canyon's trademark infringement, Western Water suffered damages of over one million dollars. She testified that the damages can be traced to that time period where Crystal Canyon was using the La Crosse Premium Water trucks and uniforms.

---

[2] Interestingly, Crystal Canyon's trial counsel agreed that Fish's testimony was sufficient to support the jury's verdict on causation. At the post verdict motion hearing, counsel stated, "We're not asking for a change of [the] causation question. When Ms. Fish testified that she was confused by the uniforms and trucks, and says she bought five [gallon bottles] of Crystal Canyon water, if the jury finds that and accepted that, then they answer that causation question 'yes'." Understandably, Crystal Canyon has revised its position as a result of the circuit court's construal of the motion for remittitur.

¶ 18. Finally, Western argues that a jury could, as a matter of common sense, infer from Crystal Canyon's use of its logo on delivery trucks and driver uniforms that customers would be confused and that business would be affected. *See Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 639–40 (7th Cir. 2003) (a jury is entitled to use its common sense to reason that customers were deceived). We agree and observe that the jury could infer from Crystal Canyon's conduct that Western's loss of business was the result of actual customer confusion. *See* RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 36 cmt. i (1995) ("proof may consist . . . of circumstantial evidence such as . . . the nature of the defendant's misconduct").

¶ 19. Crystal Canyon responds, stating that "it is important to note what evidence Western failed to introduce at trial." It takes Western to task for failing to produce a list of the two hundred customers that went back to La Crosse Premium Water in the first weeks following the distributorship change, for failing to introduce invoices indicating sales to those customers, and for failing to call any witness who ultimately switched to Crystal Canyon water as a result of confusion caused by the trademark infringement.

¶ 20. Crystal Canyon also characterizes Western's evidence as de minimis and therefore insufficient to support the verdict. It directs us to *Medi-Flex, Inc. v. Nice-Pak Products, Inc.*, 422 F. Supp. 2d 1242, 1251 (D. Kan. 2006), for the proposition that evidence of actual customer confusion "of a very limited scope . . . may be dismissed as de minimis." It insists that Western should have conducted customer surveys to assess confusion and causation and offered more witnesses who could speak to actual confusion and actual loss of business prompted by Crystal Canyon's use of Western's trademarked logo.

229

¶ 21. Indeed, this evidence could have been introduced and would have weighed on the question of causation or on damages. However, Western did present evidence of actual customer confusion and expert testimony on the resulting damages. Furthermore, a jury could infer from the undisputed fact that Crystal Canyon used the La Crosse Premium Water trucks, uniforms and some five-gallon bottles that customers were confused and Western's business in the area was affected. A jury verdict is not to be second-guessed or tampered with if it is supported by the record. Crystal Canyon's argument that there was more and better evidence available is simply irrelevant if there is "any credible evidence" to support the verdict. *See Morden,* 235 Wis. 2d 325, ¶ 38.

¶ 22. We conclude the jury could have reached the verdict that it did based on the facts of record and inferences reasonably drawn from those facts. When a circuit court overturns a jury verdict that is supported by any credible evidence, the court is clearly wrong. *Weiss,* 197 Wis. 2d at 389–90. Accordingly, the verdict must be reinstated. *See Morden,* 235 Wis. 2d 325, ¶ 38.[3]

*Insurance Coverage*

¶ 23. Because we have reinstated the jury verdict and therefore revived Western's trademark infringement claim, we must address the cross-appeal. Auto

---

[3] Western also appeals the judgment on the grounds that the circuit court erred concerning admissibility of evidence, instruction to the jury, and limiting the scope of the trademark infringement. Because we reverse and reinstate the jury verdict, we do not address these alternative arguments.

Owners challenges the circuit court's determination that insurance coverage is available to Crystal Canyon for damages arising from the trademark infringement. The interpretation of an insurance contract is a question of law subject to de novo review. *Danbeck v. Am. Family Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150. We interpret an insurance policy as a reasonable person in the position of the insured would understand it. *Id.* Where the language of the policy is plain and unambiguous, we enforce it as written. *Id.* Whether the language of an insurance policy is plain or ambiguous is a question of law, which we review de novo. *See Kernz v. J.L. French Corp.*, 2003 WI App. 140, ¶ 8, 266 Wis. 2d. 124, 667 N.W.2d 751.

¶ 24. Auto Owners issued a commercial general liability policy to Crystal Canyon, which provides in relevant part:

1. Insuring Agreement

 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "advertising injury" to which this coverage part applies.

 . . . .

 b. This insurance applies to

 . . . .

 (2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

 . . . .

2. Exclusions.

 This insurance does not apply to:

 a. "Personal injury" or "advertising injury":

231

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of falsity.

. . . .

SECTION V – DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:

. . . .

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

¶ 25. Our first task is to decide whether Crystal Canyon's conduct falls within the policy definition of advertising injury. We begin by considering whether trademark infringement falls under "Infringement of copyright, title or slogan." Western[4] argues that Crystal Canyon's trademark infringement is an "infringement of . . . title" and is covered conduct. Western directs us to *Charter Oak Fire Insurance Co. v. Hedeen & Cos.*, 280 F.3d 730 (7th Cir. 2002), for support of its position. The *Charter Oak* court, construing Wisconsin law, held that "the term 'infringement of . . . title' as used in the contract is broad enough to encompass claims of trademark infringement." *Id.* at 735–36. It reasoned that "infringement" means using someone else's words and "title" refers to names and related trademarks. *Id.* at 736. The *Charter Oak* court expressly rejected the proposition that infringement of title "unambiguously referr[ed] only 'to the noncopyrightable title of a book,

---

[4] Western and Crystal Canyon are aligned on the issue of insurance coverage. An argument attributed to one is generally asserted by both.

232

film, or other literary or artistic work.' " *Id.* Western further observes that the Auto Owners policy references infringement of copyright, which is a distinct cause of action, along with infringement of title or slogan, which are not. In other words, the drafters of the policy language were not articulating recognized causes of action, but rather categories into which certain conduct might fall. Here, Western asserts, Crystal Canyon's conduct falls under infringement of title.

¶ 26. Auto Owners counters that the definition "infringement of copyright, title or slogan" is not applicable because trademark infringement is not listed as part of the definition. It acknowledges the holding in *Charter Oak*, but refers us to *Advance Watch Co. v. Kemper National Insurance Co.*, 99 F.3d 795 (6th Cir. 1996), for the proposition that if the policy was meant to cover trademark infringement, it would have included trademark infringement in its definition of advertising injury. There, the court stated:

> Recognition of trademark . . . infringement as a distinct category of actionable conduct is so common that the only reasonable assumption is that if [the insurer] had intended to provide coverage for such liability, the insurer would have referred to it by name in the policy, as it did in the case of "infringement of copyright, title or slogan."

*Id.* at 803. Auto Owners exhorts us to follow *Advance Watch* and "afford coverage within the bounds clearly stated in the policy."

¶ 27. We are faced with the task of deciding whether to follow the reasoning of *Charter Oak* or to take the trail blazed by *Advance Watch*. For three reasons, we hold that *Charter Oak* is the authoritative guide on the question of coverage for trademark infringement where the policy defines a covered advertis-

233

ing injury to include infringement of title. First, *Charter Oak* post dates *Advance Watch* by six years, thereby providing the more recent view of the law on this issue. Second, *Charter Oak* analyzed the issue under Wisconsin law. *See Charter Oak*, 280 F.3d at 735. *Advance Watch*, in contrast, construed Michigan law. *See* 99 F.3d at 799. Finally, *Charter Oak* expressly rejected the holdings in two cases that relied on *Advance Watch* to conclude that infringement of title does not include trademark infringement. *See Charter Oak*, 280 F.3d at 736 (rejecting the holdings in *ShoLodge, Inc. v. Travelers Indem. Co. of Ill.*, 168 F.3d 256 (6th Cir. 1999), and *Callas Enters., Inc. v. Travelers Indem. Co. of Am.*, 193 F.3d 952 (8th Cir. 1999)).

¶ 28. The *Charter Oak* analysis demonstrates that Crystal Canyon's interpretation of the scope of coverage is reasonable. The phrase "infringement of title" is broad enough to encompass trademark infringement. *See Charter Oak*, 280 F.3d at 736. Where a policy definition is susceptible to more than one reasonable interpretation, we construe it in favor of coverage. *See Danbeck*, 245 Wis. 2d 186, ¶ 10. Because Crystal Canyon had an objectively reasonable expectation of coverage, we are required to resolve the dispute in Crystal Canyon's favor.[5]

¶ 29. Having determined that coverage exists, we must next resolve whether the "known falsity" exclusion applies. Coverage for an advertising injury is

---

[5] Crystal Canyon offers an alternate argument for coverage, asserting that trademark infringement is covered as a misappropriation of advertising ideas or style of doing business. Because we have determined that coverage is otherwise available, we do not address the alternate argument.

excluded if it arises "out of oral or written publication of material, if done by or at the direction of the insured with knowledge of falsity." Our first inquiry is whether an ambiguity exists with regard to the exclusion. *See Folkman v. Quamme*, 2003 WI 116, ¶ 13, 264 Wis. 2d 617, 665 N.W.2d 857. If so, we construe the exclusion narrowly, against the insurer. *Id.*, ¶ 16. The test is not what the insurer intended the exclusion to mean, but what a reasonable person in the position of the insured would have understood the words to mean. *Mau v. N.D. Ins. Reserve Fund*, 2001 WI 134, ¶ 13, 248 Wis. 2d 1031, 637 N.W.2d 45. With these principles in mind, we turn to the arguments of the parties.

¶ 30. Auto Owners asserts that the exclusion applies to damages that arose from Crystal Canyon's intentional acts, which involved the dissemination of information known by Crystal Canyon to be false. It argues that the "jury's finding that [Crystal Canyon's] use of the mark constituted an intentional disregard of [Western's] rights can only be interpreted as a finding that Jonathan Swanson and Crystal Canyon knew that they were falsely representing themselves as La Crosse Premium Water, and . . . the damages awarded stem from the false representation and are therefore excluded." Auto Owners directs us to *Mulberry Square Productions, Inc. v. State Farm Fire & Casualty Co.*, 101 F.3d 414, 422 (5th Cir. 1996), and *A.J. Sheepskin and Leather Co. v. Colonia Insurance Co.*, 709 N.Y.S.2d 82 (N.Y. App. Div. 2000), for broad interpretations of the "known falsity" exclusion.

¶ 31. While *Mulberry Square* does indicate that the "known falsity" exclusion requires intentional conduct, it does so in the context of claims for libel, slander or product disparagement. *See Mulberry Square*, 101 F.3d at 422. It is not instructive in the context of a claim

for trademark infringement. *A.J. Sheepskin* can also be distinguished from the case at hand. It involved a trademark infringement action where, after a full evidentiary hearing, the court hearing the substantive claim found the insured was a "serial infringer" that had "deliberately sought to confuse the public" by selling a product nearly identical to its competitor's product. *A.J. Sheepskin*, 709 N.Y.S.2d at 82–83. Unlike A.J. Sheepskin, Crystal Canyon did not try to pass off its own water as La Crosse Premium Water. Rather, it caused confusion by using the trademarked trucks and uniforms and delivering any remaining La Crosse Premium Water still in its inventory to customers while it transitioned the Quality Beverages distribution business over to Crystal Canyon.

¶ 32. Western argues that intentional conduct is not enough to trigger the known falsity exclusion. It asserts that neither of the two key components of Auto Owners' exclusion is present here. We agree. First, there must be "oral or written publication of material." Crystal Canyon did not publish any material. It used trucks, uniforms, and some water bottles that carried the La Crosse Premium Water logo, but those logos were on the vehicles, uniforms and bottles when Crystal Canyon purchased them. The question would be different if Crystal Canyon had added the logos after purchasing the distributorship; however, we are not inclined to hold that Crystal Canyon's temporary use of the already-labeled trucks, uniforms and bottles amounts to conduct that can be defined as oral or written publication of materials.

¶ 33. Some cases, published and unpublished alike, indicate that the known falsity exclusion is most appropriately applied where the underlying case involves intent to deceive or knowledge of falsity. *See, e.g,*

*Elcom Tech. v. Hartford Ins. Co. of the Midwest*, 991 F. Supp. 1294, 1298 (D. Utah 1997) (claim for false advertising can be proven by showing reckless indifference so exclusion does not apply); *Union Ins. Co. v. Knife Co.*, 897 F. Supp 1213, 1217 (W.D. Ark. 1995) (intent is not an element of trademark infringement; even though complaint· alleged intentional infringement, possibility of innocent infringement exists); *Interface, Inc. v. Standard Fire Ins. Co.*, No. 99–CV-1485, 2000 WL 33194955, at *5 (N.D. Ga. Aug. 15, 2000) (known falsity exclusion "appears more relevant to coverage for claims of libel or slander").

¶ 34. This brings us to the second component of the exclusion: falsity.[6] The term "falsity" is not defined in the policy and, in the context of an advertising injury, has not been the subject of any Wisconsin case law. The term, however, in common parlance means untrue, failing to conform to a set of known facts, or a lie. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 820 (1998); BLACK'S LAW DICTIONARY 637 (8th ed. 2004). As stated earlier, a claim for trademark infringement requires the proponent to show: (1) that a designation meets the definition of trademark, and (2) that the defendant's use of a similar designation is likely to cause confusion. *See Madison Reprographics, Inc.*, 203 Wis. 2d at 234. There is no requirement that the proponent prove intent to deceive. Auto Owners rests largely on the fact that the jury awarded punitive damages based on its finding that Crystal Canyon acted "in intentional disregard of Western's rights." This jury

---

[6] Because no Wisconsin case law on this issue exists, and because we consider the question of insurance coverage a close one, we choose to address both components of the exclusion in our analysis.

finding is not the equivalent of an intent to deceive and cannot be invoked to demonstrate knowledge of falsity.

¶ 35. When Crystal Canyon delivered the remaining La Crosse Premium Water bottles from Quality Beverage's inventory they were properly labeled. Likewise, when Crystal Canyon delivered its own brand of water, the labeled bottles indicated that they were Crystal Canyon water. When Mary Jo Fish asked if she could obtain La Crosse Premium Water from Crystal Canyon, Crystal Canyon told her she could not and directed her back to Western to order her water. The record simply does not support Auto Owners' assertion that Crystal Canyon published any oral or written material that it knew to be untrue.

## CONCLUSION

¶ 36. The jury reached a verdict on causation that is supported by the facts of record and inferences reasonably drawn from those facts. Because the verdict is supported by credible evidence, the circuit court erred when it changed the answer on causation from "Yes" to "No." Accordingly, we reverse that portion of the judgment dismissing the trademark infringement claim and we reinstate the verdict. We remand to the circuit court for the limited purpose of addressing Crystal Canyon's motion to remit damages.

¶ 37. We also conclude that Crystal Canyon had an objectively reasonable expectation of coverage for damages arising out of Western's trademark infringement claim. The Auto Owners policy provides coverage for infringement of title, which, properly construed in favor of coverage, encompasses trademark infringement. Furthermore, the exclusion of coverage for pub-

238

lication of oral or written materials that the insured knew to be false does not apply under the facts of this case. We therefore affirm the declaratory judgment on the issue of coverage.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.