**COURT OF APPEALS
DECISION
DATED AND FILED**

**July 2, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP432**

Cir. Ct. No. **2008CV17601**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

ANTHONY GAGLIANO & CO., INC.,

PLAINTIFF-APPELLANT,

V.

OPENFIRST LLC, CPR SYSTEMS INC., TARGET MARKETING SOLUTIONS INC., RWK ENTERPRISES, INC., OFH DISTRIBUTION LLC F/K/A OPENFIRST HOLDINGS, OPENFIRST, INC., QUAD/GRAPHICS, INC. AND NEW DIVERSIFIED MAILING SERVICES, LLC.,

DEFENDANTS,

ROBERT KRAFT AND NEW ELECTRONIC PRINTING SYSTEMS, LLC,

DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Milwaukee County: STEPHANIE ROTHSTEIN, Judge. *Reversed and cause remanded with directions*.

Before Brash, P.J., Kloppenburg and Dugan, JJ.

¶1      BRASH, P.J.  Anthony Gagliano & Co., Inc. ("Gagliano Co.") appeals an order of the trial court denying its postverdict motions and entering judgment in favor of Robert Kraft and New Electronic Printing Systems, LLC ("New EPS").  That order was the culmination of lengthy litigation stemming from the alleged breach of a lease for commercial property located on North Jefferson Street in the City of Milwaukee.  That lease, dated May 2000, was originally between Gagliano Co. as the landlord and Electronic Printing Systems, Inc. ("EPS") as the tenant, with Kraft personally guaranteeing the lease on behalf of EPS.  Subsequently, EPS's assets were sold to several entities, including New EPS;[1] the lease was assigned to New EPS, with Kraft extending his personal guaranty of the lease on behalf of New EPS.

¶2      The leased premises were vacated in the fall of 2008, and New EPS ceased making rent payments.  Gagliano Co. filed suit against New EPS and Kraft in December 2008, alleging breach of contract for the failure to pay rent through the end of the lease term, and claiming that Kraft was liable for the rents owed pursuant to his personal guaranty.  New EPS and Kraft, on the other hand, contended that Gagliano Co. had added a provision to the lease which allowed Gagliano Co.—the landlord—the option to extend the term of the lease.  Gagliano Co. had exercised that option, extending the lease term to 2010, as well as extending the term of an amendment, which added more space to the leased

_____

[1] The protracted nature of this case is further complicated by the numerous entities involved in the business throughout the duration of the lease, several of which were created and subsequently sold during that time frame.  For the sake of clarity and brevity, we limit our references to the entities that are named in this appeal.

premises, to 2012. Kraft and New EPS argued that Gagliano Co. had not disclosed this landlord extension option to Kraft when the lease was executed, and therefore Gagliano Co. had committed fraud by including that provision in the lease. Thus, they asserted that the lease was void.

¶3 The order underlying this appeal was the result of a jury verdict from the second trial in this matter, held in October 2017. The jury found that Gagliano Co. had breached its duty to disclose the landlord extension option, that New EPS had not breached the lease by ceasing to make rent payments in October 2008, and that Kraft had not guaranteed New EPS's performance of the lease. Therefore, the jury concluded that no damages for unpaid rent were owed to Gagliano Co.

¶4 Gagliano Co.'s postverdict motions argued that the verdict was not supported by credible evidence, and requested that the trial court grant judgment in its favor notwithstanding the verdict. Gagliano Co. contended that the evidence showed that Kraft and New EPS knew of the landlord extension option when EPS's lease rights were sold to New EPS and guaranteed by Kraft, and therefore that provision was expressly agreed to by New EPS and affirmed by Kraft. Furthermore, Gagliano Co. noted that subsequent actions by Kraft and New EPS after their discovery of the provision—including the execution of the amendment that added more space to the leased premises—also affirmed the lease. Therefore, Gagliano Co. argued, Kraft and New EPS were bound by all of the lease's provisions, including the landlord extension option; as a result, the jury's finding that New EPS and Kraft did not breach the terms of the lease was not supported by the evidence.

¶5 We agree that the evidence indicates that New EPS and Kraft affirmed the lease with knowledge of the landlord extension option and, therefore,

the jury verdict is not supported by the evidence. As a result, we reverse and remand to the trial court to enter a judgment in favor of Gagliano Co. notwithstanding the verdict, and for further proceedings to determine the amount of Gagliano Co.'s damages.

## BACKGROUND

¶6 As noted above, the origin of this case is the original lease negotiated between Gagliano Co. and EPS, as guaranteed by Kraft. Kraft was the chairman, founder, and chief executive officer of EPS. When Kraft initially expressed interest in leasing the premises, he gave Gagliano Co. a proposed lease which was reviewed by Gagliano Co.'s in-house counsel, Richard Kollauf, as well as Martin Greenberg, counsel retained by Gagliano Co. for the lease negotiations. On April 11, 2000, Anthony Gagliano, Kollauf, Greenberg and Kraft met to discuss changes that Gagliano Co. was proposing to that draft lease. During those negotiations, some of the terms and provisions were crossed out, and additional or revised terms and provisions were noted in the margins. Kraft and Anthony Gagliano, on behalf of Gagliano Co., then initialed each page to indicate that they were in agreement with those changes.

¶7 Shortly thereafter, EPS expressed a desire to lease additional space in the building. A revised lease was drafted by Greenberg and sent to Kraft for his review. The revised lease was dated May 22, 2000, and stated that it superseded the lease dated April 11, 2000.

¶8 As relevant to the primary issue in this case, the proposed lease provided by Kraft to Gagliano Co. had contained a provision that permitted the tenant—EPS—to extend the term of the lease for two additional three-year lease terms. During the negotiations of April 11, that tenant extension provision was

crossed out in its entirety and no alternative language was added. The revised lease of May 22, however, included a different extension provision: rather than a tenant extension option, the revised lease allowed for the *landlord*— Gagliano Co.—to extend the term of the lease for an additional four years after the expiration of the initial six-year lease term.

¶9    Kraft testified that when he received the revised lease, he did not review the entire document. Instead, he only reviewed the "Data Sheet" section, set forth on pages one and two of the revised lease, which summarized the general terms of the lease. The Data Sheet section references the landlord extension option as simply "the extension option" and notes its section number within the lease. Kraft stated that he and Anthony Gagliano had never discussed a landlord extension option, so he had assumed the reference was to a tenant option to extend—even though during their negotiations of the original draft lease they had crossed out the tenant extension option. In any event, Kraft never saw the landlord extension option prior to executing the revised lease.

¶10    In 2002, Kraft began negotiating the sale of EPS's assets to a private equity firm, which created several new entities—including New EPS—for the purpose of purchasing EPS's assets, including its lease with Gagliano Co. The purchase agreement included Kraft staying on to serve as the chief executive officer for New EPS.

¶11    The sale of EPS's assets required the consent of Gagliano Co. to assign the lease to New EPS. As a condition of approving the assignment of the lease, Gagliano Co. demanded that Kraft extend his personal guaranty of the lease for New EPS. In fact, on the Consent to Assignment prepared by EPS for Gagliano Co.'s signature, Anthony Gagliano added a notation at the bottom stating

that its consent "is given on the basis that the [t]enant and any and all guarantors of the [l]ease shall remain fully liable under the [l]ease." Kraft initialed that notation, indicating his agreement to extend his personal guaranty of the lease on behalf of New EPS.

¶12 Furthermore, under the purchase agreement for EPS's assets, Gagliano Co. was required to prepare a Landlord Estoppel Certificate in conjunction with the assignment, to set forth the status of the lease at that time. That Certificate stated that the lease was "subject … to [l]andlord's right of extension[.]"

¶13 Kraft admitted that the landlord extension provision was discovered during his negotiations with the equity firm to sell EPS's assets. He further conceded that New EPS had nevertheless agreed to assume all liabilities and responsibilities under the lease, including the landlord extension option. Kraft claimed that he called Anthony Gagliano and Greenberg and orally objected to the provision when he discovered it, but he never sought to terminate the lease.

¶14 In October 2003, the lease was amended to add additional space to the leased premises. The amendment specifically stated that the terms of the lease as executed in May 2000 applied to the amendment. Kraft admitted that he executed that amendment knowing that the landlord extension option was part of the lease, and that he did not renew his objection to the provision with Anthony Gagliano.

¶15 In December 2005, Gagliano Co. exercised the landlord extension option, extending the expiration dates of the lease and the amendment to June 2010 and January 2012, respectively. Kraft stated that he was "quite upset" about the extension but did not pursue legal action against Gagliano Co. at that

time; Kraft said it was a "business decision" because "[t]he space was working" and was convenient for the employees, and the business was "doing well."

¶16 In 2006, Quad/Graphics purchased the business from those entities created pursuant to the previous sale. The lease for the premises, however, was never assigned to Quad/Graphics; rather, Quad/Graphics effectively sublet the premises from New EPS. Kraft retained an interest and stayed on as president and chief executive officer of New EPS, as now owned by Quad/Graphics. The following year, 2007, Kraft was terminated by Quad/Graphics.

¶17 In September 2008, New EPS informed Gagliano Co. that the business was going to vacate the leased premises by October 31, 2008. Gagliano Co. responded with a notice of default for New EPS's failure to pay rent after October 2008, since the lease terms had been extended to June 2010 and January 2012. Gagliano Co. subsequently filed this action in December 2008 against Kraft, New EPS, and other entities that were created as a result of the sale of the business over the years; the complaint was subsequently amended to include Quad/Graphics as a defendant.

¶18 The case proceeded to trial in July 2011.[2] At the close of Gagliano Co.'s case-in-chief, New EPS and Kraft moved for a directed verdict. They argued that the extension notice sent by Gagliano Co. in 2005 was not in strict compliance with the requirements for notice provisions for commercial leases because it was sent to Kraft, EPS, and other entities created in the 2002 sale,

---

[2] The first trial in this case was before the Honorable Dennis P. Moroney.

rather than New EPS, the entity to which the lease had been assigned. The trial court agreed and dismissed Gagliano Co.'s claims against New EPS.

¶19 Gagliano Co. appealed, and this court reversed that decision, finding that the extension notice provided by Gagliano Co. was sufficient. *See Anthony Gagliano & Co. v. Openfirst, LLC*, 2013 WI App 19, ¶¶34, 37, 346 Wis. 2d 47, 828 N.W.2d 268, *aff'd in part, rev'd in part*, 2014 WI 65, 355 Wis. 2d 258, 850 N.W.2d 845 (*Gagliano I*). Our supreme court affirmed our determination on that issue.[3] *Anthony Gagliano & Co. v. Openfirst, LLC*, 2014 WI 65, ¶2, 355 Wis. 2d 258, 850 N.W.2d 845 (*Gagliano II*). Thus, the case was remanded to the trial court for further proceedings, specifically for fact-finding relating to the "lawfulness" of the landlord extension option. *Id.*, ¶70.

¶20 Upon remand, Gagliano Co. moved the trial court for partial summary judgment against New EPS and Kraft. With regard to its claims against New EPS, Gagliano Co. argued that New EPS was aware of the landlord extension option when it purchased EPS's interest, and further, that it reaffirmed the lease when it executed the amendment in October 2003. As a result, Gagliano Co. asserted that New EPS was legally bound by the lease, including the landlord extension option.

---

[3] This court and the Wisconsin Supreme Court also reviewed the issue of whether the trial court properly granted summary judgment in favor of Quad/Graphics, based on the issue of whether the lease had been assigned to Quad/Graphics or whether it was merely the subtenant of New EPS. We reversed the trial court, concluding that Quad/Graphics was bound by the lease terms. *Anthony Gagliano & Co. v. Openfirst, LLC*, 2013 WI App 19, ¶36, 346 Wis. 2d 47, 828 N.W.2d 268, *aff'd in part, rev'd in part*, 2014 WI 65, 355 Wis. 2d 258, 850 N.W.2d 845 (*Gagliano I*). However, our supreme court reversed that portion of our decision, concluding that Quad/Graphics was a subtenant and not an assignee of the lease. *Anthony Gagliano & Co. v. Openfirst, LLC*, 2014 WI 65, ¶71, 355 Wis. 2d 258, 850 N.W.2d 845 (*Gagliano II*). It therefore remanded the case to the trial court for the dismissal of all Gagliano Co.'s claims against Quad/Graphics. *Id.*

¶21 Gagliano Co. also asserted that Kraft was bound by his personal guaranty of the lease. Kraft had contended that Gagliano Co. committed fraud by including the landlord extension option in the lease without disclosing it to him. However, Gagliano Co. argued that rather than seeking rescission of the lease upon discovering that provision, Kraft's actions in extending his personal guaranty with the assignment of the lease to New EPS waived that defense.

¶22 The trial court denied the motion. It found that there was a material fact in dispute as to whether Kraft's alleged verbal objection to the landlord extension option bound him to the terms of the lease, regardless of his subsequent actions in affirming the lease. Gagliano Co.'s motion for reconsideration was also rejected.[4]

¶23 The matter then proceeded to trial for the second time in October 2017. The jury found that Gagliano Co. had a duty to disclose to Kraft the landlord extension option and had breached that duty. The jury further determined that Kraft's failure to discover the landlord extension option was justified under the circumstances and that he had not guaranteed New EPS's performance under the lease. Finally, the jury concluded that the inclusion of the landlord extension option was a material alteration of the lease made without Kraft's consent, and that New EPS had not breached the lease when it vacated the premises in October 2008 and stopped paying rent before the end of the extended lease terms.

---

[4] The motion for partial summary judgment was heard by the Honorable Christopher R. Foley; the motion for reconsideration was heard by the Honorable Stephanie Rothstein, who also presided over the second trial and ruled on Gagliano Co.'s postverdict motions.

¶24    Gagliano Co. filed postverdict motions, arguing that there was insufficient credible evidence to support the verdict; in the alternative, it requested that the trial court grant judgment in its favor notwithstanding the verdict. The trial court denied the motion, stating that it could not find "that the jury was so misinformed as to the facts," or that there were "essential facts" that were not provided to the jury, such that the jury did not have a reasonable basis for the verdict that was entered. The court therefore dismissed all of Gagliano Co.'s claims on the merits with prejudice. This appeal follows.

## DISCUSSION

¶25    The primary issue in this appeal revolves around the "lawfulness" of the landlord extension option, a "factual issue" that remained in dispute after the first trial and the subsequent appeals. *See Gagliano II*, 355 Wis. 2d 258, ¶¶44 n.13, 70. Kraft and New EPS argue that the inclusion of the option in the original lease constitutes fraud on the part of Gagliano Co., and therefore neither New EPS nor Kraft, under his personal guaranty, are bound by the lease. The jury's verdict inferentially supports that argument with its findings: that the option was a "material alteration" of the lease; that Gagliano Co. breached its duty to disclose the option to Kraft; and that New EPS did not breach the lease when it vacated the premises prior to the new lease term expiration established when Gagliano Co. exercised the option.

¶26    Gagliano Co., however, contends that argument fails because both Kraft and New EPS were aware of the landlord extension provision but took no action to terminate the lease, instead affirming the lease through their actions. Therefore, Gagliano Co. argues the verdict is not supported by the evidence. "In reviewing the sufficiency of evidence on appeal, we view the evidence in the light

most favorable to the jury's verdict, and we will sustain the jury's verdict if there is any credible evidence 'under any reasonable view, that leads to an inference supporting the jury's finding.'" ***Western Wis. Water, Inc. v. Quality Beverages of Wis., Inc.***, 2007 WI App 188, ¶13, 305 Wis. 2d 217, 738 N.W.2d 114 (citation omitted). We review *de novo* the trial court's determination regarding whether the evidence is sufficient to uphold the jury's verdict. *See* ***Walter v. Cessna Aircraft Co.***, 121 Wis. 2d 221, 231, 358 N.W.2d 816 (Ct. App. 1984).

¶27    "A material misrepresentation of fact may render a contract void or voidable." ***Bank of Sun Prairie v. Esser***, 155 Wis. 2d 724, 731, 456 N.W.2d 585. (1990). The party who was "fraudulently induced to enter a contract may affirm the contract and seek damages for breach or pursue the equitable remedy of rescission and seek restitutionary damages." ***Tietsworth v. Harley-Davidson, Inc.***, 2004 WI 32, ¶36, 270 Wis. 2d 146, 677 N.W.2d 233. Here, upon their discovery of the landlord extension provision, Kraft and New EPS did neither; they simply continued to perform their obligations under the lease, without seeking either rescission of the lease or damages relating to the inclusion of the option.

¶28    Nevertheless, Kraft and New EPS argue that Gagliano Co.'s inclusion of the landlord extension option was "fraud in the *factum*," that is, "the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents," and that "such fraud 'render[s] the instrument entirely void, thus leaving no right, title or interest that could be diminished or defeated.'" ***Bank of New Glarus v. Swartwood***, 2006 WI App 224, ¶43, 297 Wis. 2d 458, 725 N.W.2d 944 (brackets in original; citation omitted). However, Kraft and New EPS fail to explain how their continued performance under the lease after discovering the alleged fraudulent provision supports their argument that the lease is void.

11

¶29 In fact, our supreme court "has consistently applied the rule that a party may not seek to set aside a contract on the basis of fraud and at the same time recover the benefit of the bargain." *Digicorp, Inc. v. Ameritech Corp.*, 2003 WI 54, ¶67, 262 Wis. 2d 32, 662 N.W.2d 652. That appears to be essentially what Kraft and New EPS are trying to do: they chose not to pursue legal action against Gagliano Co.—either upon their discovery of the landlord extension option or after Gagliano Co. exercised the option—instead making the business decision to continue performing their obligations under the lease because the premises worked well for the business, which was thriving. By Kraft's own admission, after his verbal objection to Gagliano Co. regarding the option, he was content to continue under the lease, unless and until there came a point in time where Kraft and New EPS "had to call [Anthony Gagliano] on it," stating they had planned to "fight the battle at that point." In other words, Kraft and New EPS maintained their "benefit of the bargain"—occupying the leased premises—and then sought to set aside the lease on the basis of fraud when they no longer wished to maintain that benefit. This conduct is contrary to the established law relating to fraudulent contract provisions upon which Kraft and New EPS rely for their defense. Thus, Kraft and New EPS's argument—that the lease is void due to "fraud in the factum" at the time of its inception—fails.[5]

¶30 This same reasoning applies to Kraft's guaranty. Generally, any change in a contract "that results in larger responsibilities or liabilities on the part of the principal, made without the consent of the guarantor, acts as a discharge of

---

[5] Gagliano Co. raised the argument that Kraft and New EPS's fraud defense was barred under the six-year statute of limitations for such claims. Because the result of our analysis directs the entry of a judgment notwithstanding the verdict in favor of Gagliano Co., we do not reach that issue.

the guarantor." ***Baumgarten v. Bubolz***, 104 Wis. 2d 210, 215, 311 N.W.2d 230 (Ct. App. 1981). However, a guarantor's right to release may be waived if that guarantor "has knowledge of and assents, either expressly or by implication, to changes in the obligation [the guarantor] has assumed." ***Id.*** Kraft's actions affirmed the lease for both New EPS and for himself as the guarantor; he therefore waived his right to be released from the guaranty.

¶31 Finally, we address Kraft's alternative argument that the statute of frauds acts to bar Gagliano Co.'s breach of contract claim. Kraft asserts this on the basis that Anthony Gagliano owned the premises personally but executed the lease under the company name. *See* WIS. STAT. § 706.02 (2017-18); *see also* ***Gillespie v. Dunlap***, 125 Wis. 2d 461, 466, 373 N.W.2d 61 (Ct. App. 1985). It was not until executing the Landlord Estoppel Certificate in November 2002, upon the assignment of the lease from EPS to New EPS, that Anthony Gagliano noted this ownership relationship.

¶32 The statute of frauds argument was first raised by Kraft in a motion to dismiss that was heard in October 2017; it was not raised prior to or during the first trial. The trial court rejected the argument, noting that the statute of frauds "is meant to protect the parties that are instant to the contract," and that based on the circumstances of this case, the court viewed Anthony Gagliano as "the owner of the property, as someone akin to an unidentified principal in the transaction." The court further noted that Anthony Gagliano had "acted in good faith" regarding the relationship between himself personally and his corporation.

¶33 We agree. "The statute of frauds was intended to prevent fraud and perjury, not to give one party or another a technical escape from a fair and definite agreement." ***U.S. Oil Co. v. Midwest Auto Care Servs., Inc.***, 150 Wis. 2d 80, 90,

13

440 N.W.2d 825 (Ct. App. 1989). Thus, we reject Kraft's contention that the jury verdict should be affirmed on this basis.

¶34 In sum, we agree with Gagliano Co. that the evidence does not support the jury's verdict. Accordingly, we reverse the trial court's order denying Gagliano Co.'s postverdict motions, and remand this matter to the trial court with directions to enter a directed verdict in favor of Gagliano Co. Furthermore, because damages incurred by Gagliano Co. were never determined in previous proceedings, we direct the trial court to conduct further proceedings as necessary to determine a damages award.

*By the Court.*—Order reversed and cause remanded with directions.

Not recommended for publication in the official reports.