ANTHONY GAGLIANO & CO., INC., Plaintiff-Appellant,

v.

OPENFIRST, LLC, Robert Kraft, Quad Graphics, Inc. and New Electronic Printing Systems, LLC, Defendants-Respondents,

RWK ENTERPRISES, INC., d/b/a Alphagraphics, Inc., OFH Distribution, LLC, f/k/a Openfirst Holdings and New Diversified Mailing Services, LLC, Defendants.

Court of Appeals

*No. 2012AP122. Submitted on briefs January 4, 2013. —Decided January 8, 2013.*

2013 WI App 19

(Also reported in 828 N.W.2d 268.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Thomas Armstrong* and *Beth J. Kushner* of *von Briesen & Roper, S.C.*, Milwaukee.

On behalf of the defendant-respondent, *Robert Kraft*, the cause was submitted on the brief of *James W. Greer* and *Lisa M. Lawless* of *Whyte Hirschboeck Dudek S.C.*, Milwaukee.

On behalf of the defendants-respondents, Quad/ Graphics, Inc., Openfirst, LLC, and New Electronic Printing Systems, LLC, the cause was submitted on the briefs of *Michael B. Apfeld* and *Michael D. Huitink* of *Godfrey & Kahn, S.C.*, Milwaukee.

Before Fine, Brennan and Gundrum, JJ.

¶ 1. FINE, J. Anthony Gagliano & Co., Inc., appeals the circuit-court's order dismissing its claims against New Electronic Printing Systems, LLC, Openfirst, LLC, Robert Kraft, and Quad/Graphics, Inc., in connection with space leased from Gagliano.[1] We reverse.

## I.

¶ 2. This appeal has its genesis in a May 22, 2000, lease between Gagliano, as landlord, and Electronic Printing Systems, Inc., as tenant, for space in Gagliano's building at 300 North Jefferson Street in Milwaukee. The lease encompassed two aspects of the property, described by the lease as "Demised Premises I" of "approximately 50,000 rentable square feet," and "Demised Premises II" of "approximately 40,000 rentable square feet." By its terms, the lease was to ex-

---

[1] Gagliano's briefs do not separately address the trial court's dismissal of any of Gagliano's claims against Kraft. Accordingly, we do not address that matter, except insofar as Kraft's obligations under a personal guarantee of one of the leases are affected by our decision reversing the trial court's dismissal of Gagliano's claims against New Electronic Printing Systems, LLC, Openfirst, LLC, and Quad/Graphics, Inc. *See Reiman Associates, Inc. v. R/A Advertising, Inc.,* 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292, 294 n.1 (Ct. App. 1981) (issues not argued on appeal are deemed abandoned).

pire: on June 23, 2006, for Demised Premises I, and, for Demised Premises II, six years "after Tenant takes occupancy."

¶ 3. The lease, in paragraph "2.4" (which we mention because, as we will see, other documents reference this paragraph), gave Gagliano, as the "landlord," the right to renew the lease for four more years "p[r]ovided that Landlord gives notice to Tenant at least 120 days prior to the expiration dates of this Lease of its intention to renew this Lease pursuant to the same terms as contained herein but subject to the renewal rent as specified in Schedule I attached and made a part hereof." If Gagliano did "not renew the terms of this Lease as specified herein, Tenant shall be required to vacate the Premises and this Lease shall be deemed to be terminated and of no further force and effect on the Expiration Dates." The lease also restricted Electronic Printing Systems's right to assign the lease or sublet the space:

> *Notice to Landlord.* Tenant shall not, without Landlord's prior consent, (a) assign this Lease or any interest under it by voluntary act, operation of law or otherwise; or (b) sublet the Premises or any part of it. Landlord's consent to a proposed assignment or subletting shall not be unreasonably withheld. If Landlord does not consent or deny within ten (10) business days after Tenant's notice, Landlord's consent shall be deemed granted.

The Lease also provided that "Tenant and any and all guarantors of this Lease shall remain fully liable under this Lease and their guaranties, respectively, despite any sublease or assignment."

¶ 4. The lease provided where "notices, consents, and payments" were to be sent:

Landlord:

Tenant
[Electronic Printing Systems]:

A. Gagliano Co., Inc.
300 North Jefferson
Street
P.O. Box 511302
Milwaukee, WI 53203

Prior to Commencement Date:

320 East Buffalo Street
Milwaukee, WI 53202

After Commencement Date,
the Premises.

300 North Jefferson Street
Milwaukee, WI 53202

Kraft founded Electronic Printing Systems in 1996, used the word "Openfirst" as a business name, and was its president and chief executive officer. In 1999, however, Kraft sold Electronic Printing Systems to Ohio-based Target Marketing Solutions, Inc. Although, as we have seen, the May 22, 2000, lease designated "Electronic Printing Systems, *Inc.*" as the " 'Tenant,' " the execution line for the " 'Tenant' " identified it as "Electronic Printing Systems, *LLC*," for which Kraft signed. (Emphasis added, uppercasing omitted.) Kraft also guaranteed the lease, both "personally" and on behalf of "Target Marketing Solutions, Inc." (Uppercasing omitted.)

¶ 5. On May 18, 2001, Gagliano, as the " 'Landlord,' " leased to "Openfirst, Inc." as the " 'Tenant,' " 1,848 square feet of space in the same building, (300 North Jefferson Street) that was the subject of the May 22, 2000, lease between Gagliano and Electronic Printing Systems. Even though the May 22, 2000, lease

described Electronic Printing Systems as the tenant, and the May 18, 2001, lease described "Openfirst, Inc." as the " 'Tenant,' " the May 18, 2001, lease referenced the May 22, 2000, lease as being *"between the parties"* to the May 18, 2001, lease. (Emphasis added.) We italicized the words "between the parties" because this supports the assertion in Gagliano's appellate brief that this phrase was an "acknowledg[ment] that the May 22, 2000, [Electronic Printing Systems] lease was considered a lease with Openfirst," which the brief also asserts was "the owner of [Electronic Printing Systems]."[2] The May 18, 2001, lease also restricted the tenant's right to assign the lease or sublet the space: "Tenant may not assign or sublease any interest in the Premises without

[2] Occasionally throughout this opinion we substitute in brackets the full names of entities where the parties have used initials. In the view of the writer of this opinion, acronyms and initials make comprehension more, not less, difficult. Others agree. *See National Association of Regulatory Utility Commissioners v. United States Department of Energy,* 680 F.3d 819, 820 n.1 (D.C. Cir. 2012):

> We also remind the parties that our Handbook of Practice and Internal Procedures states that "parties are strongly urged to limit the use of acronyms" and "should avoid using acronyms that are not widely known." Brief-writing, no less than "written English, is full of bad habits which spread by imitation and which can be avoided if one is willing to take the necessary trouble." George Orwell, "Politics and the English Language," 13 Horizon 76 (1946). Here, both parties abandoned any attempt to write in plain English, instead abbreviating every conceivable agency and statute involved, familiar or not, and littering their briefs with references to "SNF," "HLW," "NWF," "NWPA," and "BRC"— shorthand for "spent nuclear fuel," "high-level radioactive waste," the "Nuclear Waste Fund," the "Nuclear Waste Policy Act," and the "Blue Ribbon Commission."

Chief Judge Frank H. Easterbrook made the following observation during oral argument in *LaPlant v. Northwestern Mutual Life Ins. Co.,* 701 F.3d 1137 (7th Cir. 2012):

the prior written consent of Landlord, which shall not be unreasonably withheld." Further, the typed lease's reference to which provisions of the May 22, 2000, lease between the parties were to be incorporated into the May 18 lease added in handwriting "¶ 2.4" of the May 22 lease. The lease also specified how the parties could give each other notice: "Notices under this lease shall not be deemed valid unless given or served in writing and forwarded by mail, postage prepaid, addressed as follows:

LANDLORD:

> A. Gagliano Co., Inc.
> P.O. Box 511382
> Milwaukee, Wisconsin 53203
> USA

TENANT:

> Openfirst, Inc.
> 320 East Buffalo Street
> Milwaukee, Wisconsin 53202
> USA

Such addresses may be changed from time to time by either party by providing notice as set forth above.

Kraft executed the May 18, 2001, lease on behalf of Openfirst, Inc. He also executed an October 29, 2001, amendment to that lease on behalf of "Openfirst, Inc.," as " 'Tenant,' " which extended the lease term to Novem-

---

Judge Easterbrook [After appellant's lawyer referred to the federal Class Action Fairness Act as "CAFA"]: I wish you would avoid weird acronyms and initialisms. Using real English words is helpful to generalist judges.

Oral argument in *LaPlant*, case number 12–3264 at 3:38–3:55 (October 31, 2012) (http://www.ca7.uscourts.gov/fdocs/docs.fwx?caseno=12–3264&submit=showdkt).

54

ber 7, 2004. (Bolding and uppercasing omitted.) The Amendment also recited that Openfirst, Inc. as Tenant, "certifies, confirms and agrees that as of the date of this Amendment [October 29, 2001] (a) the [May 22, 2000] Lease, as amended hereby, is in full force and effect and is legal, valid, binding and enforceable against Tenant in accordance with its respective terms."

¶ 6. Scott Kossoris, who, according to his affidavit, was a vice-president of finance at Electronic Printing Systems, Inc., and was a member of its management team, explained that things changed in 2002:

> In 2002 [Target Marketing Solutions] subsequently renamed Openfirst, sold the business to Prairie Capital II, L.P., a Chicago based private equity fund. Prairie Capital created Openfirst Holdings, LLC ("Holdings") for the purposes of acquiring the assets of the [Electronic Printing Systems, Inc.] business and assumed liability for, among other things, the Gagliano leases. As part of that transaction, the Gagliano leases were assigned to an operating entity of [Openfirst] Holdings named New Electronic Printing Systems, LLC ("New EPS").

(Parentheticals omitted.) By letter on an Openfirst letterhead dated October 16, 2002, to Gagliano at the 300 Jefferson Street address, "Electronic Printing Systems, Inc." by Kossoris sought Gagliano's consent for the assignment:

> Electronic Printing Systems intends to enter into an Asset Purchase Agreement with Openfirst Holdings, LLC, New Diversified Mailing Services, LLC, New Electronic Printing Systems, LLC or affiliates thereof (collectively referred to as "Buyer"). Buyer will purchase substantially all of [Electronic Printing Systems']s assets, including the rights under the Agreement and will assume the obligations under the Agreement (the "Proposed Transaction").

> The purpose of this letter is to request that you consent to [Electronic Printing Systems]'s assignment of the Agreement to the Buyer. Your consent to [Electronic Printing Systems]'s assignment of the Agreement to Buyer is a condition precedent to Buyer's participation in, and consummation of, the Proposed Transaction.

Although the term "Agreement" is used in the letter in two senses (the May 22, 2000, lease agreement and the "Asset Purchase Agreement"), the subject line to the October 16 letter as well as the request for consent makes it clear that the "Agreement" referred to in what we have quoted is the May 22, 2000, lease agreement between Electronic Printing Systems and Gagliano. The subject line reads: *"Re: Lease dated May 22, 2002* [sic—none of the parties disputes that this should be "2000"], *by and between A. Gagliano Co., Inc. and Electronic Printing Systems, Inc.* (the 'Agreement')." (Italics in original.) Gagliano appended its consent, dated, "10/28, 2002" on a copy of that letter. The approval, however, indicated: "This Consent is given on the basis that the Tenant and any and all guarantors of the Lease shall remain fully liable under the Lease."

¶ 7. Gagliano also executed a "Landlord Estoppel Certificate" dated November 6, 2002, addressed to "New Electronic Printing Systems, LLC c/o Prairie Capital" at a Chicago address. Gagliano's Landlord Estoppel Certificate:

- Referenced the May 22, 2000, lease "by and between A. Gagliano Co., Inc. ("Landlord") and Electronic Printing Systems, Inc, a Delaware corporation ("Tenant") hereinafter "EPS Lease";

- Referenced the "Lease Agreement dated May 18, 2001 by and between A. Gagliano Co., Inc. ("Landlord") and Openfirst, Inc. ("Tenant") and First Amendment to Lease dated October 29, 2001,

(herein collectively referred to as "Openfirst Lease" and, together with the EPS Lease, the "Leases");"

- Noted that these referenced leases "are in full force and effect"; *and*

 - "With respect to the EPS Lease, the term of the Lease commenced on June 23, 2000 and expires on January 23, 2008 subject, however, to Landlord's right of extension pursuant to Paragraph 2.4 of the EPS Lease.";

 - "The term of the Openfirst Lease commenced on May 18, 2001 and expires on November 7, 2004."

(Uppercasing omitted.) As a reminder, the May 18, 2001, Openfirst lease was for the 1,848 square feet of space in the building.

¶ 8. Gagliano's "Landlord's Consent and Agreement" on November 4, 2002, recited that "New Electronic Printing Systems, LLC" and Associated Bank, National Association "are parties to a loan and security transaction pursuant to which [New Electronic Printing Systems, LLC, as "Borrower"] granted Bank a security interest in all of the Borrower's properties and assets presently owned or hereafter acquired" and that "[i]n consideration of such arrangement, [New Electronic Printing Systems, LLC] has agreed to collaterally assign to Bank all of its interest in the Lease dated May 22, 2000, between [Gagliano] and Electronic Printing Systems, Inc., and the Lease dated May 18, 2001 and amended October 29, 2001, by and between A. Gagliano Co., Inc. as Lessor, and Openfirst, Inc. as Tenant." (Uppercasing omitted.) The document further asserts:

- "The Leases have been assigned to New Electronic Printing Systems, LLC and the Lessor [Gagliano] has consented to such assignments.";

- Gagliano "consents to the collateral assignment of Leases between" New Electronic Printing Systems, LLC, and the Bank.

- If "the interests or rights of" New Electronic Printing Systems "shall be transferred to or otherwise acquired by the Bank *or any third party* pursuant to the Collateral Assignment *or otherwise* . . . the Bank and/or *third party* shall assume and become liable for the obligations under and pursuant to the Leases."

(Emphasis added.)

¶ 9. The Gagliano leases about which we have discussed were assigned *via* an "Asset Purchase Agreement" dated November 6, 2002. (Uppercasing omitted.) The Asset Purchase Agreement further recited that upon receipt of lease-assignment consents, "all of the Real Property Leases will remain in full force and effect upon the consummation of the" asset-purchase transactions.

¶ 10. The November 6, 2002, Asset Purchase Agreement recited that it was executed by "the sellers": "Open*first,* Inc.," by its president, Kraft; "Diversified Mailing Services, Inc.," by its secretary, Kraft, and "Electronic Printing Systems, Inc.," by its president, Kraft. (Uppercasing omitted.) The Asset Purchase Agreement recited that it was executed by "the buyers": "Open*first* Holdings, LLC," by its president and chief executive officer, Darren M. Snyder; "New Diversified Mailing Services, LLC," by its president and chief executive officer, Snyder; and "New Electronic Printing Systems, LLC," by its president and chief executive officer, Snyder.

¶ 11. Effective October 23, 2003, the May 22, 2000, lease, was amended. Although the document is otherwise undated, it provides: "Commencement date

58

of this Lease shall be on October 23, 2003." The amendment increased the space in the 300 North Jefferson Street building rented by "OpenFirst, Inc., successor in interest to Electronic Printing Systems, Inc." Kraft executed the Amendment on behalf of that entity, and Gagliano signed it as well. The Amendment provided that it would have "[t]he same expiration date" as set out in the May 22, 2000, lease in connection with that lease's description of "Demised Premises I," and that it also "include[ed] the extension option as stated in paragraph 2.4" of the May 22, 2000, lease. The Amendment also provided: "All of the terms and provisions, except as expressly herein stated, of the May 22, 2000 Lease shall apply to the Lease" of the new space, referred to in the Amendment as the "Demised Premises III." The Amendment gave the following "[a]ddresses for notices, consents and payments":

Landlord:

A. Gagliano Co., Inc.
c/o Tony Gagliano or
Rick Kollauf
300 N. Jefferson St
P.O. Box 511302
Milwaukee, WI 53203

Tenant:

OpenFirst, Inc., successor in
interest to
Electronic Printing Systems, Inc.
c/o Robert Kraft
300 N. Jefferson St.
Milwaukee, WI 53203

¶ 12. The May 18, 2001, lease was further amended effective November 8, 2004, and extended the lease term "to and including June 23, 2006." Kraft also executed this amendment on behalf of "OpenFirst, Inc." The November 8, 2004, amendment also set out how Gagliano could further extend the lease term:

Landlord shall have the right to renew this Lease for an additional four-year term provided that Landlord gives notice to Tenant at least 120 days prior to the new

expiration date of this Lease of its intention to renew this Lease pursuant to the same terms as contained in this Lease as amended. In the event that Landlord shall not renew the term of this Lease as specified herein, Tenant shall be required to vacate the Premises and this lease shall be deemed to be terminated and of no further force and effect on the Expiration Date.

¶ 13. As we have seen, the "Expiration Date" was June 23, 2006. The November 8, 2004, amendment also provided: "All other terms and provisions, except as specifically herein stated, of the May 18, 2001 Lease and the October 29, 2001 First Amendment to Lease, shall apply to the Second Amendment to Lease."

¶ 14. Gagliano served a "Notice of Landlord's Extension of Leases" dated December 29, 2005, on: Kraft at "300 N. Jefferson St."; "Electronic Printing Systems, Inc." at "300 N. Jefferson St."; "Open First, Inc." at "300 N. Jefferson St."; and "Target Marketing Solutions, Inc." at "300 N. Jefferson St." The purported extension encompassed "Demised Premises I," "Demised Premises II," and "Demised Premises III," as well as the additional 1,848 square feet in the Jefferson Street building. The purported extension recited that it was the "120–day written notice" referenced in the leases, and that: "Landlord hereby renews said Lease (and Amendments thereto as aforementioned) for an additional period pursuant to the same terms as contained in said Leases and Amendment thereto, but subject to the renewal rents as specified in any schedules attached thereto." The extension referenced the lease clauses giving Gagliano that right and set the new expiration dates: "As a result of this Notice and Landlord's election to exercise its rights under paragraph 2.4 of the Lease dated May 22, 2000, and the Second Amendment to Lease effective November 8, 2004, the expiration

date of each of said Lease afore-mentioned shall be amended to read as follows:

> Demised Premises I – June 23, 2010
> Demised Premises II – June 23, 2010
> Demised Premises III – January 23, 2012
> 300 North Jefferson St., 1,848 square feet – June 23, 2010"

The Record has a June 27, 2007, receipt for payment by "Openfirst Midwest, L.L.C." to Gagliano for invoices of June 12 and 28, and July 1, 2007.

¶ 15. Kraft testified that New Electronic Printing Systems, LLC, was conducting its business at the 300 North Jefferson address. He also agreed in his testimony with the characterization by Gagliano's lawyer that he "always thought of the business at that point as Openfirst." He noted that Quad/Graphics was not yet in the picture.

¶ 16. Quad/Graphics entered the picture when Prairie Capital sold the Openfirst business to Quad/Graphics *via* a "Membership Interest Purchase Agreement" dated July 6, 2006. (Uppercasing omitted.) Quad/Graphics was the " 'Buyer' " under the Agreement, which listed the following as " 'Sellers' ": "Openfirst Holdings, LLC"; Kraft, Kossoris, and three other persons. (Bolding omitted.) The Agreement also recited that "[o]n June 21, 2006, [Openfirst] Holdings formed Openfirst, LLC, a Delaware limited liability company ("Openfirst"), as Openfirst's sole member." (Bolding omitted.) The parties do not dispute that the reference to "Openfirst" in the July 6, 2006, Agreement encompassed what was New Electronic Printing Systems, LLC, and that Quad/Graphics occupied the 300 North Jefferson Street property described in the leases with Gagliano that we have discussed. According to Kraft's affidavit, Quad/

Graphics "requested—and I agreed—to serve as the chief executive officer of Openfirst, LLC, the company formed for the acquisition, and to remain the CEO of its two subsidiaries, New EPS [New Electronic Printing Systems] and New DMS [New Diversified Mailing Services]." The Membership Interest Purchase Agreement specifically asserted that "Sellers have delivered to the Buyer true and complete copies of the Real Property Leases prior to the date hereof [July 6, 2006]." Further, the Membership Interest Purchase Agreement also specifically referenced the "Amendment to Lease dated October 23, 2003, by and between A. Gagliano Co., Inc. and Openfirst, Inc. (as amended)."

¶ 17. The July 6, 2006, Agreement between Prairie Capital and Quad/Graphics was part of a series of agreements that contemporaneously transferred ownership in the business pursuant to a "Unit Redemption Agreement" also dated July 6, 2006, between Quad/Graphics and "Openfirst, LLC, a Delaware limited liability company." (Bolding omitted.) In short, Quad/Graphics loaned money to, and received a promissory note from the following entities so they could buy Quad/Graphics's interest in the business: "Openfirst, LLC"; "New Diversified Mailing Services, LLC."; and "New Electronic Printing Systems, LLC." (Uppercasing omitted.)

¶ 18. Things did not work out, however, and on June 23, 2008, Openfirst, LLC, New Diversified Mailing Services, LLC, and New Electronic Printing Systems, LLC, executed a "Voluntary Surrender Agreement" with Quad/Graphics, by which the Openfirst entities surrendered their collateral to Quad/Graphics. The Voluntary Surrender Agreement also permitted Quad/Graphics "to store the Collateral in its present location(s)," and authorized Quad/Graphics "to change and/or remove any locks and security devices at the Collateral loca-

tion." The parties' briefs do not dispute that the space in the 300 North Jefferson Street building encompassed by the Gagliano leases we have referenced was where the collateral covered by the Voluntary Surrender Agreement was stored. Indeed, the Record has Quad/Graphics vendor-payment invoice sheets showing that Quad/Graphics paid rent to Gagliano from July, 2007 to September 1, 2008. Gagliano's main appellate brief asserts that the "rent payments reflected amounts due and owing under the *extended* leases, not the lesser amount that would have been owed if the leases had been month-to-month." (Emphasis in original.)

¶ 19. June 23, 2008, is also the date of a "Sublease" between New Electronic Printing Systems, LLC, as "Sublessor" and Quad/Graphics as "Sublessee" whereby New Electronic Printing Systems purported to sublet its approximately 100,000 square feet of space in the 300 North Jefferson building to Quad/Graphics, Inc., for a term running from June 23, 2008, to not later than October 31, 2008. Quad/Graphics agreed to pay to New Electronic Printing Systems rent for that space. Gagliano did not, as the leases for the 300 North Jefferson property required, consent. The sublease also purported to immunize Quad/Graphics from the terms of the 300 North Jefferson leases:

> Sublessor [New Electronic Printing Systems] and Sublessee [Quad/Graphics] hereby expressly agree that Sublessee shall have no liability under any lease of the Premises from the fee owner thereof to Sublessor as tenant (the "Primary Lease"). Only Sublessor is liable under such Primary Lease. Sublessee is not assuming the Primary Lease or any obligations or liabilities thereunder. Sublessee shall have no obligations to such fee owner arising out of or related to this Sublease. Furthermore, the fee owner of the Premises shall not be construed as a third party beneficiary under this

63

Sublease and shall not be entitled to enforce any or all of the terms of this Sublease or have any rights or claims hereunder whatsoever. Sublessor agrees to indemnify, defend and hold Sublessee harmless from and against all losses, costs (including attorneys' fees and legal expenses), expenses, liabilities, damages and claims brought by the fee owner of the Project or the Premises or arising out of, resulting from or related to the Primary Lease.

¶ 20. By letter dated, September 1, 2008, New Electronic Printing Systems, LLC, by "Andrew R. Schiesl, Secretary," gave Gagliano written notice that New Electronic Printing Systems "will vacate the premises" at 300 North Jefferson Street "on or before October 31, 2008," which, the letter asserted was "approximately one hundred and twenty (120) days from the date of my meeting with your representative Sam Dickman on June 27, 2008, during which I informed him of New [Electronic Printing Systems]'s intention ('Expiration Date')." The letter also advised Gagliano that "No future payments of rent or other charges and expenses will be paid after the Expiration Date." The letterhead was styled:

*New Electronic Printing Systems, LLC*
*300 North Jefferson Street*
*Milwaukee, WI 53203*

(Italics in original.)

¶ 21. Gagliano served a "Notice of Default" dated October 20, 2008, on the following:

- Kraft;
- "Electronic Printing Systems, Inc.";
- "New Electronic Printing Systems, Inc. [*sic*]";

64

- "Open First, Inc." at 300 North Jefferson Street;

- "Open First, Inc." at 320 East Buffalo Street in Milwaukee;

- "Target Marketing Solutions, Inc c/o Robert Kraft"; and

- Quad/Graphics.

(Bolding and uppercasing omitted.) The Notice asserted that the recipients were "in default under the terms of your leases and their subsequent amendments" for the 300 North Jefferson Street property, noting that the "original leases were executed May 22, 2000 and May 18, 2001." The defaults declared were for non-payment of rent and claimed damage to the property.

¶ 22. By letter to Gagliano's lawyer dated November 17, 2008, Schiesl, on behalf of "New Electronic Printing Systems, LLC," asserted that the notice (and one dated September 5, 2008) "were incorrectly sent to the following recipients: Electronic Printing Systems, Inc.; New Electronic Printing Systems, Inc.; Openfirst, Inc.; and Quad Graphics," and "clarif[ied] the current tenant under the Leases is New EPS, which is well known by the Landlord as evidenced by that certain Consent to Assignment dated October 28, 2002, and that certain Landlord Estoppel Certificate dated November 6, 2002, both executed on behalf of Landlord for the benefit of New EPS." Schiesl's letter said that "[a]ll further correspondence regarding the Leases should be directed to New EPS at the following address:

> New Electronic Printing Systems, LLC
> N63W23075 State Highway 74
> Sussex, WI 53089–2827
> c/o Andrew Schiesl
> Quad/Graphics, Inc.

The Sussex address is that given on the Quad/Graphics vendor-payment invoice sheets for rent paid to Gagliano from July, 2007 to September 1, 2008.

¶ 23. As a consequence of all of this, Gagliano sued, as material to this appeal: "Openfirst, LLC" at Quad/ Graphics's Sussex address; Kraft; New Electronic Printing Systems, LLC, in care of Schiesl at Quad/Graphics's Sussex address; "Openfirst, Inc." in care of its registered agent in Delaware; and Quad/Graphics, also in care of Schiesl at Quad/Graphics's Sussex address.

¶ 24. The trial court dismissed on summary judgment Gagliano's claims against Quad/Graphics, ruling in an oral decision that "there is absolutely no indication that Quad agreed to any of this"—that is, the leases. Further, the trial court opined that it was Gagliano's burden "to find out who the heck they're really doing business with . . . [and] could have negotiated additional security or undertakings with whoever is going to be the new operation in there"—that is, 300 North Jefferson Street.

¶ 25. The trial court also granted a directed verdict at the close of the trial's evidence, ruling that New Electronic Printing Systems was not bound by Gagliano's December 29, 2005, Notice of Lease Extension, "[b]ecause there's no jurisdiction over New EPS so as to make them subject to any type of extension." The trial court also ruled that Kraft was responsible personally for the extension in connection with the May 22, 2000, lease for which he gave a personal guarantee, "but not him in a corporate capacity in [sic] behalf of New EPS."

## II.

¶ 26. As seen from our necessarily extensive review of the documents, this appeal has a veneer of

complexity, exacerbated by the similarity of the various entities' names and the briefs' pervasive use of initials referencing them. Further, as we have also seen, references to the various "Openfirst" entities in the documents were occasionally imprecise. Nevertheless, as we show below, both aspects of Gagliano's appeal are controlled by the documents; our lengthy fact-review has been but an essential prelude to, thankfully, a shorter legal analysis.

■■■

¶ 27. This appeal asks us to review the trial court's grant of summary judgment to Quad/Graphics dismissing Gagliano's claims against it, and the trial court's grant of a directed verdict dismissing Gagliano's claims against New Electronic Printing Systems, LLC, and Openfirst, LLC. Our review of the trial court's summary-judgment ruling is *de novo. See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315317, 401 N.W.2d 816, 820821 (1987). Our review of a trial court's decision to order a directed verdict appl[ies] the same standard as the trial court, *Tanner v. Shoupe*, 228 Wis. 2d 357, 375, 596 N.W.2d 805, 815 (Ct. App. 1999), looking for any evidence that would support a contrary jury verdict, *Marquez v. Mercedes-Benz USA, LLC*, 2012 WI 57, 4849, 341 Wis. 2d 119, 143144, 815 N.W.2d 314, 326327 ("An appellate court should not 'overturn a circuit court's decision to dismiss for insufficient evidence unless the record reveals that the circuit court was "clearly wrong." '") (quoted source and footnote omitted). Further, although when normal evidentiary matters are at issue, we thus give substantial deference to the trial courts better ability to assess the evidence, *Tanner*, 228 Wis. 2d at 375, 596 N.W.2d at 815816, we essentially review *de novo* the directed-verdict grant when the evidence is primarily documentary rather

than testimonial, *see State v. Schmitt*, 2012 WI App 121, 9, 344 Wis. 2d 587, ___, 824 N.W.2d 899, 902 (The interpretation of documentary evidence is a question of law that is reviewed de novo.). Additionally, leases are contracts, the interpretation of which are matters of law also subject to our *de novo* review. *Foursquare Properties Joint Venture I v. Johnny ' s Loaf & Stein, Ltd.*, 116 Wis. 2d 679, 681, 343 N.W.2d 126, 127 (Ct. App. 1983). And we apply a contract's clear language as it reads. *Sampson Investments by Sampson v. Jondex Corp.*, 176 Wis. 2d 55, 62, 499 N.W.2d 177, 180 (1993). *Hortman v. Otis Erecting Co., Inc.*, 108 Wis. 2d 456, 461, 322 N.W.2d 482, 484–485 (Ct. App. 1982), explains the rule:

> In construing the terms of a contract, where the terms are plain and unambiguous, it is the duty of the court to construe it as it stands, *even though the parties may have placed a different construction on it.* It seems to us that when parties to a contract adopt a provision which does not contravene a principle of public policy, and which contains no element of ambiguity, the court has no right, by a process of interpretation, to relieve one of them from any disadvantageous terms which he has actually made.

(Emphasis added; quoted source omitted.) Thus, the general rule is that a party to a contract cannot avoid obligations under that contract by claiming that he or she did not read it. *See Rent-A-Center, Inc. v. Hall*, 181 Wis. 2d 243, 248 n.5, 510 N.W.2d 789, 792 n.5 (Ct. App. 1993) ("It is the 'firmly fixed' law in this state that, absent fraud, a person may not avoid the clear terms of a signed contract by claiming that he or she did not read or understand the contract.") (quoted source omitted). Any other rule would eviscerate the certainty and finality upon which business transactions and our com-

merce depend. Although Kraft claims he was surprised that paragraph 2.4 of the May 22, 2000, lease gave Gagliano as the landlord the right to extend the lease term, and there was testimony by him and others that such lease clauses are rare, he signed the lease, personally guaranteed it, and executed other leases incorporating paragraph 2.4. Further, the uncontradicted evidence reveals that he is a sophisticated business person, and was in 2000. Moreover, paragraph 2.4 stands out on page four of the May 22, 2000, lease, which, excluding the exhibits, is only thirteen pages. Paragraph 2.4 is headed: *"Landlord's Right of Extension."* (Underlining in original.) The clause itself is but seven and one-half lines. Although the general rule will give way when the party seeking to avoid a contract presents a colorable contention of undiscoverable fraud, *see Hennig v. Ahearn*, 230 Wis. 2d 149, 156, 165–169, 601 N.W.2d 14, 18, 22–23 (Ct. App. 1999), that is not the situation here.

¶ 28. A party that accepts a contract's benefits is bound to its burdens. *Meyers v. Wells*, 252 Wis. 352, 355, 31 N.W.2d 512, 514 (1948) (Accepting a contract's benefits "amounts to an adoption and [the party accepting the benefits] must accept the contract and its burdens as well as its benefits."); *S & O Liquidating Partnership v. Commissioner of Internal Revenue*, 291 F.3d 454, 459 (7th Cir. 2002) ("A party who has accepted the benefits of a contract cannot 'have it both ways' by subsequently attempting to avoid its burdens."). Thus, a party's written acceptance of a lease "binds the assignee to perform all the provisions of the lease—that is his contract—for the period he occupies the premises," even though the "acceptance appears in a document other than the lease or that lessors have consented to the assignment by conduct rather than in

writing," and even though "the lease does not contain a provision making the lease binding on assignees." *Berg v. Ridgway*, 140 N.W.2d 95, 99–100 (Iowa 1966). We assess against this background the documents in this case. They are dispositive.

¶ 29. As noted, the core issue is two-fold: whether New Electronic Printing Systems, LLC, and Openfirst, LLC, were bound by Gagliano's December 29, 2005, Notice of Lease Extension, and, relatedly, whether Quad/Graphics was bound by the leases, including the leases' extension by the December 29, notice.

A. *The Lease Extension.*

■

¶ 30. As we have seen, Gagliano served its December 29, 2005, Notice of Lease Extension on: New Electronic Printing Systems, Inc., Open First, Inc., and Target Marketing Solutions, Inc., as well as on Kraft, all at the 300 North Jefferson Street address. The October 23, 2003, amendment specified that "Open-First, Inc., successor in interest to Electronic Printing Systems, Inc." at the 300 North Jefferson Street address was the proper recipient for notice. The October 23, 2003, amendment encompassed not only the May 22, 2000 lease, but also the rental space added by that amendment. Additionally, the May 18, 2001, lease specified that notice to the "tenant" was to be given to "Openfirst, Inc.," albeit at the "320 Buffalo Street" address. All of the leases incorporated paragraph 2.4 of the May 22, 2000, lease, which, as we have already seen, granted to Gagliano the right to extend the lease term.

¶ 31. Although service at an address not specified might in some cases be consequential, service on Open First, Inc., at 300 North Jefferson Street rather than

320 Buffalo Street is not consequential here for two reasons: (1) service was made on the correct entity ("Open First, Inc."), and we see no reason not to apply the general principle that we disregard errors that "do not affect substantial rights," *see* WIS. STAT. RULE 805.18(1) ("The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party."); and (2) Open First, Inc., received the benefits of the May 18, 2001, lease and under the law we have already recognized was therefore bound by the paragraph-2.4 extension clause adopted by the May 18 lease. Thus, the December 29, 2005, Notice of Lease Extension was binding on "OpenFirst, Inc.," in connection with all of the space leased from Gagliano by the Openfirst entities. It was also binding on Kraft as guarantor of the May 22, 2000, lease. The question remains as to whether any of the other documents changed that. They did not.

¶ 32. First, Gagliano's consent to the 2002 assignment of the leases in connection with the New Electronic Printing Systems succession to the Openfirst business specifically noted that Gagliano's consent was conditioned on "the Tenant and any and all guarantors of the Lease" "remain[ing] fully liable under the lease." (The clause reads, as we have seen: "This Consent is given on the basis that the Tenant and any and all guarantors of the Lease shall remain fully liable under the Lease.")

¶ 33. Second, the Asset Purchase Agreement further recited that upon receipt of Gagliano's lease-assignment consents, "all of the Real Property Leases will remain in full force and effect upon the consummation of the" asset-purchase transactions. Thus, all the lease provisions—*including the proper parties for*

71

*service of notice under the leases*—in connection with the 300 North Jefferson Street space survived and carried through to the entities succeeding to the Openfirst business.

¶ 34. Third, under *Myers* and the other similar authority we have cited, the Openfirst entities used the 300 North Jefferson Street property encompassed by the leases, and, therefore, were bound by the leases and amendments, especially the amendment effective October 23, 2003, which specifically provided that Openfirst, Inc., was the proper recipient of notices. That the October 23, 2003, amendment does not indicate *when* it was signed is a red herring; the amendment says it is effective on October 23, 2003: "Commencement date of this Lease shall be on October 23, 2003." Gagliano's December 29, 2005, Notice of Lease Extension was therefore effective and bound Openfirst, Inc., and its successors. Accordingly, the trial court was clearly wrong as a matter of law when it granted a directed verdict dismissing Gagliano's claims against New Electronic Printing Systems, LLC, and Openfirst, LLC.

B. *Quad/Graphics.*

¶ 35. As we have seen, Gagliano's consent to the assignment of the leases when New Electronic Printing Systems took over the Openfirst business was conditioned on, among other things, the following: If "the interests or rights of" New Electronic Printing Systems "shall be transferred to or otherwise acquired by . . . *any third party* pursuant to the Collateral Assignment *or otherwise* . . . the . . . *third party* shall assume and become liable for the obligations under and pursuant to the Leases." (Emphasis added.) This clause unambigu-

ously applies to Quad/Graphics by virtue of the italicized language and the legal principles discussed in Part II.A. Thus, the notice provisions in the October 23, 2003, amendment carried through to Quad/Graphics as well.

¶ 36. Moreover, Quad/Graphics, a sophisticated business entity, occupied the 300 North Jefferson Street premises under a purported sublease with New Electronic Printing Systems (we say "purported" because the leases required Gagliano's consent to subleases, which it did not give). Thus Quad/Graphics accepted the benefits conferred by the Gagliano leases and their amendments, which were also disclosed to it in the July 6, 2006, Membership Interest Purchase Agreement. Therefore, Quad/Graphics cannot disclaim or avoid its liabilities for the burdens imposed by those leases and amendments—including the lease-extension terms in paragraph 2.4 and the October 23, 2003, amendment's specification of the proper recipients for notice. We recognize that Quad/Graphics attempted to do that in the purported sublease, but Gagliano was not a party to that sublease and did not consent to it. It is elemental law that only parties to an agreement may be bound by it. *See Lakeshore Commercial Finance Corp. v. Drobac*, 107 Wis. 2d 445, 447, 455–458, 319 N.W.2d 839, 840, 845–846 (1982); *Gans v. St. Paul Fire & Marine Ins. Co.*, 43 Wis. 108, 113, 1877 WL 3668 at *2 (1877) (A contract that seeks to "bind a third party who is a stranger to it, and who never agreed to be bound by it . . . would be a manifest absurdity."). Thus, Gagliano's December 29, 2005, Notice of Lease Extension was effective and bound Quad/Graphics as well as Openfirst, Inc.'s other successors. Therefore, the trial court improperly granted summary judgment to Quad/Graphics dismissing Gagliano's claims against it.

73

## III.

¶ 37. In sum, we reverse the trial court's dismissal of Gagliano's claims against New Electronic Printing Systems, LLC, Openfirst, LLC, and Quad/Graphics. Accordingly, we do not discuss the other grounds Gagliano advances for reversal. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed). We remand for further proceedings including, if appropriate, a determination and apportionment of damages.

*By the Court.*—Order reversed and cause remanded.