COURT OF APPEALS
DECISION
DATED AND FILED

July 30, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1144**

STATE OF WISCONSIN

Cir. Ct. No. 2008CV17601

IN COURT OF APPEALS
DISTRICT I

---

ANTHONY GAGLIANO & CO. INC. AS ASSIGNEE OF DEFENDANT AND CROSS-CLAIM PLAINTIFF, ROBERT KRAFT,

PLAINTIFF-APPELLANT,

V.

QUAD/GRAPHICS, INC. AND OPENFIRST LLC,

CROSS-CLAIM DEFENDANTS-RESPONDENTS,

NEW ELECTRONIC PRINTING SYSTEMS LLC,

CROSS-CLAIM DEFENDANT.

---

APPEAL from a judgment of the circuit court for Milwaukee County: LAURA GRAMLING PEREZ, Judge. *Affirmed*.

Before White, C.J., Donald, P.J., and Geenen, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Anthony Gagliano & Co. Inc. ("Gagliano") appeals, as an assignee of the defendant and cross-claim plaintiff Robert Kraft, from a judgment of the circuit court which rejected Kraft's cross-claims for indemnification.  For the reasons discussed below, we affirm.

## BACKGROUND

¶2      This case has a lengthy litigation history, and this marks the third time that this case has come before this court.  *See **Anthony Gagliano & Co. v. Openfirst, LLC***, 2013 WI App 19, 346 Wis. 2d 47, 828 N.W.2d 268, *aff'd in part, rev'd in part,* 2014 WI 65, 355 Wis. 2d 258, 850 N.W.2d 845 (***Gagliano I***); ***Anthony Gagliano & Co. v. Openfirst LLC***, No. 2018AP432, unpublished slip op. (WI App July 2, 2019), *review denied* (***Gagliano II***).

¶3      In short, this case originated from a May 22, 2000 commercial lease (the "Lease") between Gagliano and Electronic Printing Systems, Inc. ("EPS"). Kraft, who founded EPS, signed a personal guaranty of the lease in his personal capacity.

¶4      Relevant to this appeal, at the time that the lease with Gagliano was signed, EPS was owned by Target Marketing Solutions.  Target Marketing Solutions also owned Diversified Mailing Services, Inc. ("DMS").  Later, Target Marketing Solutions was renamed to Openfirst, Inc.  Kraft was the President of Openfirst, Inc.

¶5      In 2002, a private equity group sought to purchase certain assets of Openfirst, Inc.  Openfirst, Inc. formed Openfirst Holdings, LLC along with two

new subsidiaries of Openfirst Holdings, New Electronic Printing Systems, LLC ("New EPS") and New Diversified Mailing Services, LLC ("New DMS") to facilitate the sale.

¶6 On November 6, 2002, Kraft signed an Asset Purchase Agreement on behalf of the sellers—Openfirst, Inc., EPS, and DMS—and was appointed to serve as president of the buyers—Openfirst Holdings, New EPS, and New DMS. The 2002 Asset Purchase Agreement identified the Lease as a "purchased asset" and "assumed liability." Thus, the Lease was assigned to New EPS. Additionally, the 2002 Asset Purchase Agreement required Openfirst Holdings, New EPS, and New DMS to indemnify Kraft for "defense costs and liability" under his personal guaranty of the Lease.

¶7 On the same date that the 2002 Asset Purchase Agreement was executed, Openfirst Holdings amended its Operating Agreement. The 2002 Operating Agreement allowed Kraft to enforce Openfirst Holdings' indemnity obligation.

¶8 Subsequently, in 2006, Quad/Graphics, Inc ("Quad") expressed an interest in purchasing Openfirst Holdings. To facilitate the acquisition, Openfirst Holdings formed Openfirst LLC. Pursuant to a 2006 Assignment and Assumption Agreement, Openfirst Holdings then assigned its interest in certain assets to Openfirst LLC.

¶9 After the assignment, in a 2006 Membership Interest Purchase Agreement, Openfirst Holdings sold its membership interest in Openfirst LLC to Quad. Quad entered into an Amended and Restated Operating Agreement. The 2006 Amended Operating Agreement required Openfirst LLC to indemnify Kraft only for liability he incurred "by reason of the fact that he … is or was a Manager

or Officer, or while a Manager or Officer is or was serving at the request of [Openfirst LLC]" and as long as Kraft "acted in good faith" and without "gross negligence, willful misconduct, violation of law, breach of the fiduciary duty of loyalty or breach of this Agreement."

¶10 After Quad took ownership of Openfirst LLC, the business did not meet performance expectations. In 2007, Quad terminated Kraft and management personnel. By June of 2008, Openfirst LLC and New EPS had defaulted on loans those entities obtained from Quad. Quad moved to foreclose on the assets securing the loans and, on June 23, 2008, Openfirst LLC and New EPS entered into a voluntary surrender agreement, under which they surrendered the secured assets to Quad in partial satisfaction of the loan. Quad assumed ownership of the assets. Openfirst LLC's fixed assets and business operations were combined with Quad's existing direct mail operation, which was a division of Quad's business. Quad vacated the leased premises and stopped paying rent.

¶11 In 2009, Gagliano brought a breach of contract action against multiple parties including Openfirst LLC, Kraft, New EPS, New DMS, and Quad. Gagliano alleged, amongst other claims, a failure to pay rent due under the Lease and subsequent amendments. In response, Kraft filed several cross-claims seeking indemnification.

¶12 Most recently, in 2019, we remanded this case back to the circuit court to enter a judgment in favor of Gagliano and determine damages. *See Gagliano II*, No. 2018AP432, ¶34. On remand, the circuit court entered judgment against Kraft and New DMS jointly and severally, in the amount of $6,410,072.71, and against New EPS jointly and severally with New DMS and Kraft in the amount of $6,323,236.23.

4

¶13    Kraft moved for summary judgment on his cross-claims for indemnification against New EPS, Openfirst LLC, and Quad. Gagliano joined in the motion arguing that the "potential inability to collect the full judgment from Kraft threatens Gagliano's interests[.]" The circuit court denied Kraft's motion for summary judgment, and set the cross-claims for trial.

¶14    Subsequently, Kraft assigned his cross-claims to Gagliano. Several days later, Gagliano moved the circuit court to substitute Gagliano as the cross-claim plaintiff, which the circuit court granted.

¶15    Following a bench trial, on December 15, 2021, the circuit court issued its findings of fact and conclusions of law regarding Kraft's cross-claims. In pertinent part, the court found that Openfirst LLC and Quad were not required to indemnify Kraft for his personal guaranty of the Lease. The court also found that Openfirst LLC, New EPS, and New DMS did not share identity of ownership with Quad, and consequently, Quad's acquisition of Openfirst LLC and its subsidiaries did not result in Quad assuming the liability of those companies or their affiliates.

¶16    The circuit court issued a judgment, finding in favor of Quad and Openfirst LLC, and dismissing with prejudice the claims assigned to Gagliano. Gagliano now appeals. Additional relevant facts are addressed below.

## DISCUSSION

¶17    On appeal, Gagliano contends that Quad is responsible for the judgment against Kraft. Below, we address: (1) whether Quad and Openfirst LLC owed a contractual duty to indemnify Kraft; and (2) whether Quad is liable under the mere continuation exception to the successor liability doctrine.

5

## I.    Contractual Duty for Indemnification

¶18    Gagliano argues Kraft's right to indemnity is governed by contract. "Contract interpretation presents a question of law that we review independently of previous decisions of the circuit court … but benefitting from [its] discussions." *Max v. Morris*, 2019 WI 34, ¶20, 386 Wis. 2d 122, 925 N.W.2d 112 (citation omitted; alterations in *Morris*).  Following a bench trial, a circuit court's factual determinations cannot be set aside unless they are clearly erroneous and due regard must be given to the circuit court's opportunity to judge the credibility of the witnesses.  *A & A Enters. v. City of Milwaukee*, 2008 WI App 43, ¶17, 308 Wis. 2d 479, 747 N.W.2d 751; WIS. STAT. § 805.17(2) (2021-22).[1]

¶19    Here, as the circuit court found, the 2002 Asset Purchase Agreement required Openfirst Holdings to indemnify Kraft for "defense costs and liability" under his personal guaranty of the Lease.

¶20    Gagliano contends that the 2002 Asset Purchase Agreement was binding on all successors and assigns.  In support, Gagliano points to Section 7.10(a) of the 2002 Asset Purchase Agreement.  This section provides that the 2002 Asset Purchase Agreement is:

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

> binding upon and inure[s] to the benefit of the parties hereto and their respective successors and permitted assigns, but will not be assignable or delegable by any party without the prior written consent of the other party, <u>provided</u>, <u>however</u>, that each of the Buyers shall be allowed to assign its rights and benefits hereto to (a) an Affiliate so long as the Affiliate assumes such Buyer's obligations hereunder[.]

(Emphasis in original.)

¶21 The 2002 Asset Purchase Agreement, however, was not assigned to Openfirst LLC. In 2006, Openfirst Holdings and Openfirst LLC entered into an Assignment and Assumption Agreement. As part of the Assignment and Assumption Agreement, Openfirst LLC agreed to assume Openfirst Holdings' obligations under certain enumerated contracts. The agreement states: "[Openfirst LLC] desires to accept the Assets and assume [Openfirst Holdings'] liabilities and obligations under the Contracts (as defined herein), all on the terms and conditions hereof." Openfirst LLC also agreed "to perform all other obligations of [Openfirst Holdings] arising after the Closing Time under, the Contracts[.]" Seventeen contracts were then listed, but do *not* include the 2002 Asset Purchase Agreement, the 2002 Operating Agreement, the Lease, or Kraft's personal guaranty.

¶22 Thus, as the circuit court found, "Openfirst [LLC] is not a transferee, successor, or assign under the 2002 Asset Purchase Agreement or [2002] Operating Agreement[.]" Accordingly, neither Openfirst LLC nor Quad were required to indemnify Kraft on his personal guaranty. Openfirst Holdings could have specifically enumerated the 2002 Asset Purchase Agreement in the contracts listed in the 2006 Assignment and Assumption Agreement, but it did not do so.

¶23    Gagliano argues that the 2006 Assignment and Assumption Agreement includes the 2002 Asset Purchase Agreement. Paragraph 1. in the 2006 Assignment and Assumption Agreement provides:

> 1.    <u>Assignment</u>. [Openfirst Holdings] hereby transfers and assigns to [Openfirst LLC] all of [Openfirst Holdings'] right, title and interest in (i) the agreements listed on Annex A hereto (the "Contracts"); (ii) the intellectual property listed on Annex B hereto (the "Intellectual Property"); and (iii) all of the assets of [Openfirst Holdings] related to the Business, including, but not limited to, all cash in Associated Bank account 2173107117 prior to the Closing (other than those assets set forth in Schedule 3.6(d) to the Purchase Agreement and any proceeds received pursuant to the Purchase Agreement) (collectively with the Contracts and the Intellectual Property, the "Assets").

This paragraph, at sub. (iii), refers to money and a specific account, which are tangible assets. As Quad observes, tangible assets are not the same as contract rights and thus do not include the 2002 Asset Purchase Agreement, Openfirst Holdings' indemnification obligation, the Lease, or Kraft's personal guaranty. The paragraph separately addresses the assignment of Contracts, a defined term within the agreement. The indemnification obligation and guaranty fit within the definition of "Contracts," but are not among the list of assigned contracts.

¶24    In addition, Gagliano argues that all of the obligations of Openfirst Holdings flowed through the 2002 Bill of Sale. The 2002 Bill of Sale provides that Openfirst Inc. "grants, transfers, sells, conveys, assigns and delivers to Buyer [Openfirst Holdings] … all of Seller's [Openfirst Inc.'s] right, title and interest of every kind and nature in and to [Openfirst Inc.'s] Seller Proprietary Rights[.]" Additionally, the Bill of Sale provides that it was "entered into pursuant to and is subject to all of the terms of the [2002 Asset] Purchase Agreement," and that "this Agreement shall inure to the benefit of and be binding upon Buyer and Seller, and

their respective successors and assigns[.]" However, as discussed above, the 2006 Assignment and Assumption Agreement explicitly specifies the assets transferred, and does not include the 2002 Asset Purchase Agreement.

¶25 Lastly, we are not persuaded that the 2006 Amended Operating Agreement or the 2006 Membership Interest Purchase Agreement entitles Kraft to indemnification. The 2006 Amended Operating Agreement requires Openfirst LLC to indemnify Kraft when he is joined in a lawsuit "by reason of the fact that he … is or was a Manager or Officer, or while a Manager or Officer is or was serving at the request of the Company[.]" Kraft was not a Manager or Officer of Openfirst LLC when he signed his personal guaranty in May 2000 because Openfirst LLC did not exist at the time.[2]

¶26 The 2006 Membership Interest Purchase Agreement provides in relevant part:

> [s]ubsequent to the Closing, subject to the limitations set forth in this Article IX, the Buyer [Quad] shall indemnify, defend and hold harmless each Individual Seller from and against any and all Losses incurred by such Individual Seller that arise out of the Individual Sellers' Newco Document Claims.

"Individual Sellers' Newco Document Claims" is a defined term which is restricted to losses incurred by Kraft that arise out of "any misrepresentation or breach of any warranty made the Buyer [Quad] contained in Article V … (other than those misrepresentations or breaches of warranty relating to the Employment Agreements or the Operating Agreements[.])." The representations and warranties

---

[2] The formation papers for Openfirst LLC were first filed in June 2006.

contained in Article V relate to Quad's authority and ability to consummate the transaction and do not relate to the Lease or Kraft's personal guaranty.

¶27 Therefore, as the circuit court found, Quad and Openfirst LLC did not owe a contractual duty to indemnify Kraft.[3]

## II. Mere Continuation Exception

¶28 Gagliano also argues that Quad is liable to Kraft as New EPS's successor. "It is well established that when a company sells or transfers all of its assets to another company, the purchasing company does not become liable for the transferring company's debts and liabilities." *Veritas Steel, LLC v. Lunda Constr. Co.*, 2020 WI 3, ¶17, 389 Wis. 2d 722, 937 N.W.2d 19. This rule, however, is subject to four exceptions:

> (1) when the purchasing corporation expressly or impliedly agreed to assume the selling corporation's liability; (2) when the transaction amounts to a consolidation or merger of the purchaser and seller corporations; (3) when the purchaser corporation is merely a continuation of the seller corporation; or (4) when the transaction is entered into fraudulently to escape liability for such obligations.

*Springer v. Nohl Electric Prods. Corp.*, 2018 WI 48, ¶16, 381 Wis. 2d 438, 912 N.W.2d 1 (citation omitted).

¶29 At issue in this appeal is the mere continuation exception. The "key element" in the application of the mere continuation exception is whether there is

---

[3] We note that the parties also discuss whether the circuit court erred by finding that Kraft's indemnification claim was subject to a time limitation. Because we conclude that Quad and Openfirst LLC do not have an indemnification obligation, we do not address whether Kraft's claim was timely. *See State v. Castillo*, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997) ("An appellate court should decide cases on the narrowest possible grounds.").

"a common identity of the officers, directors and stockholders in the selling and purchasing corporations." *Fish v. Amsted Indus. Inc.*, 126 Wis. 2d 293, 302, 376 N.W.2d 820 (1985) (citation omitted).

¶30    A circuit court's findings of fact regarding the identity of ownership will not be overturned unless they are clearly erroneous. *IGL-Wisconsin Awning, Tent and Trailer Co. v. Greater Milwaukee Air and Water Show, Inc.*, 185 Wis. 2d 864, 869-70, 520 N.W.2d 279 (Ct. App. 1994). Under the clearly erroneous standard, "even though the evidence would permit a contrary finding, findings of fact will be affirmed on appeal as long as the evidence would permit a reasonable person to make the same finding." *Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 2006 WI 46, ¶12, 290 Wis. 2d 264, 714 N.W.2d 530 (citation omitted). We will "search the record not for evidence opposing the circuit court's decision, but for evidence supporting it." *Id.*

¶31    Here, following the bench trial, the circuit court, in its findings of fact, found that "[t]he officers, directors, and shareholders, and business of Openfirst [LLC], New EPS, and New DMS prior to the [Voluntary Surrender Agreement] differed significantly from those of Quad after the [Voluntary Surrender Agreement]." In support, the court's decision noted that:

11

> [t]he only Openfirst [LLC] officers who continued in the same role at Quad after the [Voluntary Surrender Agreement] were [Chuck] DuPont and [Andy] Schiesl. One other officer, [Steve] Jaeger, took on a different role at Quad, as a divisional president, and three had, or apparently had, no role at Quad.[4]

With respect to the directors, the circuit court found that "[a]t the time of the [Voluntary Surrender Agreement], there were 9-10 board members of Quad" and Joel Quadracci was "the only member who had also served on the board of Openfirst [LLC], New EPS, or New DMS prior to the [Voluntary Surrender Agreement]." In addition, the circuit court found that Quad owned Openfirst LLC, which in turn owned New EPS, and that ownership group contrasted with the three hundred distinct shareholders of Quad at the time of the Voluntary Surrender Agreement. Subsequently, in its conclusions of law, the court determined that "Quad was not the 'mere continuation' of Openfirst [LLC], New EPS, or New DMS because the latter three parties did not share identity of ownership with Quad."

¶32 Gagliano asserts that the circuit court's decision is undermined by the fact that the Openfirst LLC Board of Managers consisted of Quadracci, the President and CEO of Quad and one of Quad's Board members, and John Fowler, Quad's Senior Vice President of Finance and CFO. Additionally, Steve Jaeger, the President of New EPS and Openfirst LLC, became the President of Quad Direct, a division of Quad, after the Voluntary Surrender Agreement. The composition of the Board and Jaeger's position after the Voluntary Surrender

___
[4] We note that the circuit court incorrectly found that Chuck DuPont had continued in the same role when in fact he had transferred his responsibilities to Quad's investments in Poland in April 2008. John Fowler was Quad's chief financial officer in 2008. This error cuts in favor of Gagliano. Without DuPont, only Andy Schiesl served in the same officer role before and after the Voluntary Surrender Agreement.

Agreement, however, are only two facts in the overall analysis of the identity of ownership.

¶33    Gagliano also asserts that an identity of ownership exists because Quad controlled Openfirst LLC and New EPS. Gagliano asserts that: (1) "all control over Openfirst [LLC] was vested in a 'Board of Managers,'" consisting of Quadracci and Fowler; (2) Quad controlled Openfirst LLC and New EPS through its security interest in Openfirst LLC, New EPS, and New DMS; and (3) Quad had the ability to manage and control Openfirst LLC, New EPS, and New DMS because they had defaulted on a loan made by Quad. These facts are not relevant to the identity of ownership. The Wisconsin Supreme Court has rejected identity of management and control as a benchmark to establish identity of ownership. "Identity of ownership, not identity of management and control, remains the essential element that a plaintiff must establish under [] the … mere continuation exception[]." *Veritas Steel*, 389 Wis. 2d 722, ¶34.

¶34    Thus, we are not persuaded that the circuit court's finding that Quad lacked identity of ownership with Openfirst LLC, New EPS, and New DMS is clearly erroneous.[5]

## CONCLUSION

¶35    In sum, for the reasons stated above, we affirm. Quad and Openfirst LLC did not owe a contractual duty to indemnify Kraft for liability.

---

[5] Quad also argues that the continued existence of New EPS provides an independent basis to affirm the circuit court's ruling. Because we conclude that the circuit court did not err in finding that Quad and New EPS did not share an identity of ownership, we do not address this argument. *Castillo*, 213 Wis. 2d at 492.

Additionally, the mere continuation exception to the successor liability doctrine does not apply.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.