In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-3264

MARLEEN M. LAPLANT, individually and on behalf of a class,

*Plaintiff-Appellee*,

*v.*

THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 11-C-910 — **Lynn Adelman**, *Judge*.

ARGUED OCTOBER 31, 2012 — DECIDED NOVEMBER 28, 2012[*]

Before EASTERBROOK, *Chief Judge*, and FLAUM and SYKES, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Northwestern Mutual sold an annuity contract, which the parties call a "Pre-MN annuity," to approximately 36,000 persons. Of these, some 3,000 live in Wisconsin. In 1985 Northwestern Mutual changed the method it used to calculate the annuitants' annual dividend. The annuitants contend that this change violates the terms of the

---

[*] This opinion is being issued in typescript. A printed copy will follow.

annuity contracts, both substantively and with respect to the notice Northwestern Mutual must give its customers.

This is not the first class action filed by the annuitants. In 2001 the lawyers who today represent Marleen LaPlant, our representative plaintiff, filed suit in a Wisconsin state court seeking to represent all annuitants throughout the nation. The judge declined to certify that class, ruling among other things that (a) a claim for damages creates individual issues that make class treatment imprudent, and (b) a national class is not manageable given differences in the state law applicable to the policies, approximately 45% of which contain choice-of-law clauses specifying application of the law in the annuitants' home state, rather than Wisconsin, where Northwestern Mutual is incorporated and has its headquarters. *Noonan v. Northwestern Mutual Life Insurance Co.*, 298 Wis. 2d 247 (Ct. App. 2006), affirmed that decision. The current suit, reflecting the limits established in *Noonan*, initially proposed a class limited to annuitants who live in Wisconsin and sought only a declaratory judgment that the 1985 change is invalid. A declaratory judgment in favor of the class could be followed by individual suits seeking damages.

The Wisconsin-only suit was certified as a class action and tried to the court (since the only proposed remedy was a declaratory judgment). Judge Dennis J. Flynn ruled in plaintiffs' favor, issuing a sweeping decision declaring that Northwestern Mutual violated the annuity contracts, breached its fiduciary duties, and should pay substantial compensatory and punitive damages. *Plant [sic] v. Northwestern Mutual Life Insurance Co.*, No. 08-CV-11988 (Cir. Ct. Milwaukee County Mar. 7, 2011). The class then amended its complaint to seek damages for all annuitants in every state.

Contending that the amendment brought the suit within the scope of the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1453, Northwestern Mutual filed a notice of removal. LaPlant asked the district court to remand, relying on

§1453(d), which says that the Act "shall not apply to any class action that solely involves— … (2) a claim that relates to the internal affairs or governance of a corporation or other form of business enterprise and arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized". (Section 1332(d)(9)(B) contains a materially identical provision for suits filed initially in federal court.) LaPlant maintained that the suit "relates to the internal affairs" of Northwestern Mutual because the policyholders of a mutual insurer have an ownership interest in its governance and profits. Northwestern Mutual replied that the suit relates to the annuity contracts, not to its internal affairs, and that at all events the suit does not "solely involve[]" Wisconsin's corporate law, given the choice-of-law clauses that led to *Noonan*'s decision against certifying a national class.

The district court remanded the suit. 2012 U.S. Dist. LEXIS 116872 (E.D. Wis. Aug. 20, 2012). The judge observed that the appellate decision in *Noonan* had not *held* that multiple states' laws apply but had concluded only that the state trial judge had not abused his discretion in so holding. Deeming the state trial judge's decision on that point not binding, the federal district judge declared that the choice-of-law clauses are invalid and that Wisconsin law applies to the policyholders in every state. The district judge also concluded that all disputes concerning policies issued by a mutual insurer relate to that insurer's internal affairs, so that §1453(d)(2) requires a remand. We accepted Northwestern Mutual's petition for permission to appeal. See 28 U.S.C. §1453(c)(1).

The application of §1453(d)(2) in litigation concerning a Wisconsin corporation has the potential to create anomalies. The internal-affairs doctrine is "a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corpora-

tion and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands." *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982). See also *Atherton v. FDIC*, 519 U.S. 213, 223 (1997). Section 1453(d)(2) reflects the view that, when just one state's law applies to a nationwide class, a state court can provide a satisfactory resolution. Yet Wisconsin does not uniformly employ the internal-affairs doctrine. In *Beloit Liquidating Trust v. Grade*, 270 Wis. 2d 356 (Wis. 2004), the Supreme Court of Wisconsin applied Wisconsin law to a suit concerning the internal affairs of a Delaware corporation. Northwestern Mutual does not contend, however, that a state's adoption of the internal-affairs doctrine is essential to a remand under §1453(d)(2), which asks whether the dispute "relates to" internal affairs and not what law the state court will apply (apart, that is, from the "solely" language).

The parties do, however, dispute how we should resolve uncertainties about whether a particular suit relates to internal affairs. The district court concluded, and the class contends, that "relates to" should be read broadly and that the existence of other issues (here, the interpretation of the contracts) should not prevent a remand. Northwestern Mutual sees the word "solely" as defeating a broad reading of "relates to". Although at least one circuit has held that the statutory language reflects a preference for remand to state court, see *Greenwich Financial Services Distressed Mortgage Fund 3 LLC v. Countrywide Financial Corp.*, 603 F.3d 23, 29 (2d Cir. 2010), this circuit's approach is to read the exceptions in §1332(d) and §1453(d) without a presumption for either remanding or retaining jurisdiction. We try to give the statutory language a natural meaning in light of its context, without a thumb on the scale. See, e.g., *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609 (7th Cir. 2012); *Katz v. Gerardi*, 552 F.3d 558 (7th Cir. 2009).

Congress did not define "internal affairs", but neither did it signal a departure from that term's ordinary meaning, which the Supreme Court restated in *Edgar*: "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders". By that standard, LaPlant's claim does not relate to Northwestern Mutual's internal affairs. The suit does not involve the identity or authority of the firm's officers or directors, and the annuitants are not shareholders.

True, policyholders in a mutual have "ownership" interests, but that is not enough. Holders of corporate bonds also have ownership interests, especially when the issuer does not pay the promised return (the very sort of claim LaPlant makes). Yet disputes between corporations and their creditors regularly are resolved under the law of contract; they are not thought of as disputes about internal corporate affairs. Annuity policies are effectively debt contracts, and this suit depends on the terms of promises that Northwestern Mutual made in the "Pre-MN annuities." Money due under a contract is not a dividend for corporate-law purposes, no matter what the contract calls it. In corporate law, a dividend is discretionary with the board. The annuitants are entitled to be paid, not to a role in Northwestern Mutual's corporate governance.

One logical implication of holding that a dispute between annuitants and mutual insurers relates to the insurer's internal affairs would be that any dispute about the meaning of *any* of the issuer's policies relates to the firm's internal affairs—for holders of standard policies, no less than holders of annuities, have remote "ownership" interests in mutual insurers. Yet suits about the meaning of an advertising-injury coverage, or an exclusion for intentional torts, are decided every day without either judge or litigants dreaming that they need to understand or address corporate law. These are disputes about the policies, resolved under insurance

law rather than the Model Business Corporations Act and the internal-affairs doctrine. Just so with disputes about the meaning of annuity contracts. A court should proceed in this suit the same way it would if the issuer were a for-profit insurer with shares traded on the New York Stock Exchange rather than a mutual insurer. Judge Flynn relied on New York and Wisconsin insurance law and several states' laws about marketing but scarcely mentioned Wisconsin's corporate law. That pretty much shows that this dispute does not concern the internal affairs of a Wisconsin corporation. What's more, the class relies heavily on Wis. Stat. §632.62, a provision covering how "participating" policies share in divisible surplus. Section 632.62 is part of Wisconsin's insurance code rather than its corporate code.

The annuitants are entitled to the full measure of their rights no matter the issuer's financial structure, but under contract law and insurance law (and potentially securities law, since annuities can be securities if not regulated as insurance policies, see *SEC v. United Benefit Life Insurance Co.*, 387 U.S. 202 (1967)) rather than corporate law. LaPlant and the class have not cited any decision, by any state court, applying the internal-affairs doctrine to claims by annuitants based on promises made in their policies, and we conclude that §1453(d)(2) does not apply.

The choice-of-law clauses found in about 45% of the annuities reflect their status as regulated insurance products. Many states require insurance policies to be governed by the law of the state in which the insured lives (or the policy is issued) rather than the law of the state in which the insurer is incorporated. And if multiple states' law applies, this litigation cannot be resolved "solely" under Wisconsin's corporate law even if it were within the scope of the internal-affairs doctrine (which, to repeat, is isn't). The district court thought otherwise, proceeding in two steps. First, it applied Wisconsin's common-law choice-of-law principles, see *Heath*

*v. Zellmer*, 35 Wis. 2d 578 (1967), and found that, in the absence of a choice-of-law clause, Wisconsin law would apply. Second, it concluded that any contract specifying a different set of legal rules is ineffectual as contrary to the public policy reflected in *Heath*. Because the main function of contractual choice-of-law clauses is to specify a body of law other than the one that would be selected using common-law methods, the upshot of the district court's decision is that all choice-of-law clauses are invalid in Wisconsin.

For this startling proposition the district court cited only *Bush v. National School Studios, Inc.*, 139 Wis. 2d 635, 642 (1987). *Bush* dealt with a suit under the Wisconsin Fair Dealership Law, which forbids any contractual departure from its provisions. Wis. Stat. §135.025(3). Wisconsin's insurance law lacks any equivalent language. *Bush* acknowledged that Wisconsin regularly enforces choice-of-law clauses. 139 Wis. 2d at 642, citing *Jefferis v. Austin*, 182 Wis. 203, 205 (1923); *Brown v. Gates*, 120 Wis. 349 (1904). The a state trial court determined that the choice-of-law clauses in these very contracts are valid—and although the appellate decision in *Noonan* held that this ruling was not an abuse of discretion, by LaPlant's lights what the appellate court should have held is that the clauses are invalid and that a national class therefore could have been certified. We are not disposed to disagree with the holding of a Wisconsin trial court, and the strong implication of a Wisconsin appellate court, on the validity of these particular contractual clauses as a matter of Wisconsin law. Under *Erie* our task is to resolve a dispute about state law the way the state's highest court would resolve it, and our best assessment is that the Supreme Court of Wisconsin would agree with the approach already taken by the state's trial and appellate judges.

LaPlant relies on *Drinkwater v. American Family Mutual Insurance Co.*, 290 Wis. 2d 642 (2006), for the proposition that choice-of-law clauses can be deemed invalid even in the ab-

sence of a statute such as §135.025(3). The dispute in *Drinkwater* concerned an insurer's claim to subrogation under a contract that gave the insurer a right to be repaid from an insured's tort recoveries against third parties. A clause in the contract pointed to Iowa law, but *Drinkwater* nonetheless held that Wisconsin law applied until the victim—a citizen of Wisconsin injured in an accident in Wisconsin—had been made whole by the combination of insurance proceeds and damages in tort. Only after a make-whole recovery could the contractual right to subrogation kick in. We said earlier that many states insist that their own insurance law, and not the law of the insurer's home state, apply to policies issued in or for the benefit of their citizens. That's what *Drinkwater* concluded. And that is also what the choice-of-law clauses in the "Pre-MN annuity" contracts provide. *Drinkwater*, which held that the law of the insured's state prevails over the law of the insurer's (or employer's) state, does not suggest to us that the Supreme Court of Wisconsin would conclude that the law of Wisconsin necessarily governs all annuities issued by a Wisconsin insurer, even if the policies themselves and the law of the annuitants' home states provide otherwise. (The class does not contend that any other state's domestic law would be repugnant to Wisconsin, so that potential limit on choice-of-law clauses is inapplicable.)

This is a contract case, not a corporate-governance case. And multiple states' law applies to these contracts. Every state enforces promises, but states differ in how they calculate damages and when (if ever) punitive damages are available for breach of contract (which the plaintiffs want to recast as a tort claim for breach of fiduciary duty). Section 1453(d)(2) therefore does not permit a remand, and this class action must be finally resolved in federal court. The district judge must determine whether to certify a nationwide class for damages and, having resolved that and any other procedural issue, must decide the case on the merits.

A federal court inherits a removed case in its procedural posture on the date of removal. When this case was removed, Judge Flynn was free to reconsider his own decision—to consider not only whether it was substantively correct but also whether the Uniform Declaratory Judgments Act, which Wisconsin has adopted, Wis. Stat. §806.04, permits the maneuver by which the class sought to get around *Noonan*'s holding that Wisconsin law does not allow the annuitants to pursue a class-wide claim for damages. The doctrine of law of the case therefore does not prevent the district judge from evaluating both sides' contentions. And law of the case does not apply at all once a trial court's decision is on appeal; we will be as free to review Judge Flynn's decision on the merits (should the federal district court enter a judgment based on it) as we would be had the identical decision been made initially by the federal district judge. See, e.g., *Williams v. CIR*, 1 F.3d 502 (7th Cir. 1993) (a trial court's decision never binds an appellate court through the doctrine of law of the case).

VACATED AND REMANDED