In the

# United States Court of Appeals
## For the Seventh Circuit

No. 23-2507

ANGELA SUDHOLT, individually and on behalf of all others similarly situated, *et al.*,

*Plaintiffs-Appellants*,

*v.*

COUNTRY MUTUAL INSURANCE COMPANY, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:22-cv-3064-DWD — **David W. Dugan**, *Judge*.

ARGUED SEPTEMBER 11, 2023 — DECIDED OCTOBER 2, 2023

Before WOOD, HAMILTON, and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. We accepted this interlocutory appeal to determine whether either of two exceptions to the federal jurisdiction otherwise supplied by the Class Action Fairness Act requires remanding this case to Illinois state court. The question arises in a lawsuit brought by policyholder members of Country Mutual Insurance Company alleging that the firm accumulated and retained excess surplus of over

$3.5 billion—profits resulting from premium revenues exceeding the cost of claims—and thereby failed to supply those policies at cost. The plaintiff policyholders attribute the excess surplus accumulation to Country Mutual's directors and officers seeking to enrich themselves with excessive compensation and related benefits, in violation of fiduciary duties and other legal obligations applicable to policies issued by a mutual insurance company.

This case belongs in state court under CAFA's internal-affairs exception. See 28 U.S.C. § 1332(d)(9)(B). Each of the plaintiffs' four claims sounds in allegations of corporate mismanagement that not only reflect transgressions of fiduciary duties owed by current and former directors, but also breaches of contract, unjust enrichment, and a violation of the Illinois Consumer Fraud Act. We see no way to adjudicate any of these claims without immersion into the boundaries of the discretion afforded by Illinois law to officers and directors of a mutual insurance company to set capital levels and make related decisions about surplus distributions to policyholder members.

We likewise see the case as falling within CAFA's home-state controversy exception, see 28 U.S.C. § 1332(d)(4)(B), as the individual defendant whose citizenship creates minimal diversity is not a "primary defendant" in the overall litigation. Under this exception too, then, we return the case to Illinois state court.

# I

## A

This appeal arises out of a class action lawsuit filed in St. Clair County, Illinois against Country Mutual and 46 of its

current and former officers and directors. The plaintiffs are current or former holders of policies issued by Country Mutual or one of its affiliates, with every member of the proposed class being an Illinois citizen for purposes of the jurisdictional analysis required by CAFA. See 28 U.S.C. § 1332(d)(2). Headquartered in Bloomington, Country Mutual likewise is an Illinois citizen. And 45 of the individual director and officer defendants are also Illinois citizens. The 46th individual defendant, Robert Bateman, is a citizen of Massachusetts.

The plaintiffs brought four claims—three against Country Mutual (Counts I, II, and III) and one against the individual defendants (Count IV). Suffice it for now to observe that Count I advanced a breach of contract claim, Count II a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, and Count III a claim for unjust enrichment under Illinois law. Count IV names only the individual directors and officers and alleged a claim for breach of fiduciary duty.

Based on the size of the putative class, the amount in controversy, and the minimal diversity created by individual defendant Robert Bateman's Massachusetts citizenship, Country Mutual invoked CAFA and removed this case from St. Clair County to federal district court in southern Illinois. See 28 U.S.C. §§ 1332(d); 1453(b). The plaintiffs then moved to remand, contending that the action satisfies at least one of three exceptions to the federal jurisdiction otherwise supplied by CAFA: the internal-affairs exception in § 1332(d)(9)(B), the home-state controversy exception in § 1332(d)(4)(B), and the local controversy exception in § 1332(d)(4)(A).

B

The district court denied the motion to remand, concluding that no exception applies. Regarding the internal-affairs exception and relying on our decision in *LaPlant v. Northwestern Mutual Life Insurance Co.*, 701 F.3d 1137 (7th Cir. 2012), the district court determined that the breach of contract, consumer fraud, and unjust enrichment claims do not relate solely to matters of corporate governance and thus do not fit within the exception.

Turning to the home-state controversy exception, the district court concluded that the plaintiffs targeted not only Country Mutual, but also Robert Bateman (a Massachusetts citizen and the sole non-Illinois defendant) as a "primary defendant." The fact that Bateman was not a citizen of Illinois—the state in which the plaintiffs filed their action—meant that the class action did not qualify as a home-state controversy, making jurisdiction proper in federal court.

The district court also rejected the plaintiffs' argument under the local controversy exception—a ruling not challenged on appeal.

In its final analysis, the district court denied the plaintiffs' motion to remand. We then accepted the plaintiffs' interlocutory appeal under 28 U.S.C. § 1453(c).

II

Congress enacted CAFA with the primary objective of "ensuring 'Federal court consideration of interstate cases of national importance.'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013) (quoting Class Action Fairness Act, Pub. L. No. 109-2, § 2(b)(2), 119 Stat. 5 (2005)). The enactment did so by amending the diversity jurisdiction statute to authorize

federal courts to hear a class action if the proposed class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million. See 28 U.S.C. § 1332(d)(2), (d)(5)(B). CAFA also loosened removal requirements. See 28 U.S.C. § 1453(b). The Supreme Court has since emphasized that there is "no antiremoval presumption attend[ing] cases invoking CAFA," as Congress "enacted [the statute] to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

All agree that the class action brought by the plaintiffs satisfies CAFA's general requirements for federal jurisdiction. The question therefore is whether the action fits within either of two exceptions—internal-affairs or home-state controversy—requiring a remand to Illinois state court.

## A

Congress housed the internal-affairs exception in § 1332(d)(9) and framed it by stating that the jurisdiction otherwise supplied by CAFA in § 1332(d)(2) "shall not apply to any class action that solely involves a claim … that relates to the internal affairs or governance of a corporation or other form of business enterprise and that arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized." *Id.* § 1332(d)(9), (d)(9)(B). (The same limitation appears in CAFA's removal provisions in 28 U.S.C. § 1453(d)(2).) The party requesting remand—here the plaintiffs—must show that the exception provision applies. See *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 619 (7th Cir. 2012).

By its terms, the exception requires determining whether the class action "solely involves a claim" pertaining to a corporation's "internal affairs or governance." The "solely involves" limitation means that the class action cannot include a claim that does not "relate to" internal affairs or corporate governance. To put the point in affirmative terms, each claim advanced in the class action must concern a corporation's internal affairs or governance. This formulation gives effect to Congress's combined (though perhaps awkward) use of the terms "solely involves" and "relat[ing] to" in delineating the exception. See *Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 32 (2d Cir. 2010) (employing similar reasoning and explaining that "the phrase 'solely involves' ensures that federal jurisdiction under CAFA cannot be defeated by adding a claim that falls within a § 1332(d)(9) exception to a class action complaint advancing one or more other claims").

While Congress did not supply a definition of "internal affairs" or "corporate governance," we know from other language within the exception—specifically, the requirement that the plaintiff's claim be one that "arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized"—that the focus is on state corporate law. That conclusion follows even more from the recognition that the term "internal affairs" has a well-established meaning in choice of law doctrine—the "internal affairs doctrine"— "which recognizes that only one state should have the authority to regulate a corporation's internal affairs—the state of incorporation." *VantagePoint Venture Partners 1996 v. Examen, Inc.*, 871 A.2d 1108, 1113 (Del. 2005). The doctrine owes its existence to the principle that the law of the state of incorporation should govern "the entire gamut of

internal corporate affairs," *id.*, most especially the "relationships among a corporation and its officers, directors, and shareholders," *id.* at 1115. See also *McDermott Inc. v. Lewis*, 531 A.2d 206, 215 (Del. 1987) (explaining the internal affairs doctrine and defining "matters *peculiar* to corporations" as "those activities concerning the relationships *inter se* of the corporation, its directors, officers and shareholders" (emphasis in original)).

These conclusions find only further reinforcement in CAFA's legislative history. The Senate Report accompanying CAFA explained that the statute employs the term "internal affairs" the same way the Supreme Court did in *Edgar v. MITE Corp.*, 457 U.S. 624 (1982). See S. Rep. No. 109-14, at 45 (2005). Albeit in the context of a constitutional dispute, the Court in *Edgar* observed (in response to an argument pressed by one of the parties) that internal affairs, when used within the realm of conflicts of law doctrine, addresses "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders." *Id.* at 645.

All of this leaves us with no doubt that Congress intended CAFA's internal-affairs exception to carry this same core meaning. The exception aims to exclude from CAFA's jurisdiction class actions whose claims concern the governance of a corporate enterprise, including through the exercise of fiduciary duties by directors and officers—matters on which state courts have the final word under state law. In this way, then, the inclusion of an internal-affairs exception tells us that Congress wanted to leave in state court (and withhold federal jurisdiction over) class actions concentrated on matters of corporate governance, where uniform and definitive

interpretations of the legal duties governing management of the enterprise facilitate commercial activity.

Returning to the case before us, our task is clear. We must discern whether the plaintiffs' claims relate to the internal affairs or governance of Country Mutual. We conclude that they do.

In filing their complaint in the St. Clair County Circuit Court, the plaintiffs had to adhere to Illinois's requirement of fact pleading. See *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1053 (Ill. 2006) (explaining that Illinois law requires a plaintiff to allege facts sufficient to bring a claim within a legally recognized cause of action). To our eye, the plaintiffs adhered to this obligation, and their doing so lessens the difficulty of our review. Indeed, the complaint leaves us of the firm conviction that each of the plaintiffs' four claims turns upon common allegations that Country Mutual and its directors and officers managed the company to benefit themselves at the expense of the policyholder members—in violation of the fiduciary obligations governing the affairs of an Illinois mutual insurance company. At every turn, the complaint alleges mismanagement, director and officer self-enrichment as well as disregard of alleged duties to return excess surplus to policyholders.

It matters not that the plaintiffs cast only one of their claims in terms of a breach of fiduciary duty and the others as a breach of contract (Count I), a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count II), and unjust enrichment (Count III). It is the substance of each claim that matters. In reading the factual allegations supporting Counts I, II, and III, it is clear that each claim rests on the same foundation—the contention that Country Mutual's

directors and officers failed to manage the firm as a mutual insurance company and instead accumulated, if not hoarded, excess surplus to enrich themselves at the expense of the policyholder members. Here are a few representative samples of the plaintiffs' allegations:

- *Factual Allegations*: "[I]f a mutual insurance company's board of directors is acting within its authority to provide policyholders with insurance coverage at cost, the board is not permitted to unreasonably retain excessive premiums." Compl. ¶ 130.

- *Count I—Breach of Contract*: While "Country Mutual is permitted to exercise discretion in its determination of when it must return to its policyholders the excess of paid premiums over the cost of providing insurance coverage," Compl. ¶ 259, "Country Mutual's legal duty to return to its policyholders the excess of paid premiums over the cost of providing insurance coverage is incorporated into all of its contractual agreements with its policyholders," Compl. ¶ 256.

- *Count II—Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act*: "Country Mutual unfairly and deceptively retained the premiums paid by Country Mutual members." Compl. ¶ 284.

- *Count III—Unjust Enrichment*: "By using premiums paid by Country Mutual members to support financial incentives of its subsidiaries, Country Mutual breached its obligation to its members to provide insurance at cost and unjustly enriched itself and its affiliates." Compl. ¶ 296.

- *Count IV—Breach of Fiduciary Duty*: "Individual Defendants breached their fiduciary duties to Country Mutual policyholders by willfully retaining profits and revenue derived from policyholder premiums to accumulate a surplus that is grossly excessive." Compl. ¶ 314.

Without offering any views on the merits, we see no way to resolve any of the plaintiffs' claims without determining whether Country Mutual retained excess capital and, by extension, failed to return an amount of surplus to its policyholder members. Every claim hinges on the answer to that threshold question. Even more, the answer—as the plaintiffs seem to acknowledge—will depend on an assessment of how Country Mutual's directors and officers exercised the discretion they have to determine capital requirements and to make related dividend (surplus) distribution decisions. The necessary analysis must account for the complexity of insuring losses. Put another way, the ultimate resolution of each of the plaintiffs' claims will come not from Excel spreadsheet calculations or interpreting a particular provision in one or another insurance policy but from a qualitative assessment of business judgments made by Country Mutual management. See *Hill v. State Farm Mut. Auto. Ins. Co.*, 166 Cal. App. 4th 1438, 1448–49, 1469–76 (Cal. Ct. App. 2008) (applying Illinois law in the context of a nationwide class action alleging that a mutual insurance company breached a duty to pay dividends by retaining excessive surplus and emphasizing the broad discretion directors have to make business judgments about capital retention and distributions to policyholders).

To restate our conclusion in the language Congress employed in CAFA, the plaintiffs' complaint "solely involves"

claims that root themselves in allegations that "relate to" Country Mutual's "internal affairs" or "corporate governance"—in contentions that directors and officers exercised the discretion they have to set capital levels and determine dividend distributions in impermissible ways that benefited themselves and harmed policyholder members. *Id.* § 1332(d)(9)(B).

Our conclusion finds reinforcement in our reasoning in *LaPlant v. Northwestern Mutual Life Insurance Co.*, 701 F.3d 1137 (7th Cir. 2012). There we concluded that a breach of contract claim did not fit within CAFA's internal-affairs exception because resolving the claim required no more than interpreting the terms and conditions of the annuity policy at issue. See *id.* at 1140. In reasoning to that conclusion, we took care to explain that the situation would have been altogether different if the plaintiffs' claim had related to something "discretionary with the board"—like a dividend payment. *Id.* Just so here: the plaintiffs' complaint—through and through—hinges recovery on showing that Country Mutual's management exceeded the bounds of permissible discretion in making capital-retention and surplus-distribution decisions.

One final point warrants attention. Country Mutual suggests that CAFA's internal-affairs exception applies only to claims against current—but not former—directors and officers. We cannot agree. It is easy to envision claims against former directors (say, for example, for violating a duty of loyalty) who allegedly looted a company and then resigned or retired. The whole case would be about corporate governance, yet Country Mutual would position such a claim outside of CAFA's internal-affairs exception simply because *former*

directors committed fiduciary breaches. We see no indication that Congress intended for employment status to serve as the gating mechanism for applying CAFA's internal-affairs exception.

Because the internal-affairs exception applies, federal jurisdiction is lacking and this case must return where it originated, to the Circuit Court in St. Clair County, Illinois.

B

The home-state controversy exception provides an independent reason for remanding this suit to Illinois state court.

And once again we begin with CAFA's text. Under 28 U.S.C. § 1332(d)(4), a district court "shall decline to exercise jurisdiction" when "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." *Id.* § 1332(d)(4), (d)(4)(B).

Everyone agrees that more than two-thirds of the members of the proposed class are citizens of Illinois. The point of contention is whether one particular defendant, Robert Bateman—a citizen of Massachusetts and the defendant who supplied the minimal diversity for Country Mutual's invocation of CAFA jurisdiction in federal court—is a "primary defendant" within the meaning of the home-state controversy exception.

Congress left the term undefined in CAFA. On a prior occasion, however, we observed in passing that the plain import of "primary defendant" requires identifying the "gravamen of the complaint." *Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 585 (7th Cir. 2017). Other courts have selected analogous nouns to help guide the inquiry. See, *e.g.*, *Vodenichar v.*

*Halcon Energy Props., Inc.*, 733 F.3d 497, 504–05 (3d Cir. 2013) (explaining that a "primary defendant" is a defendant who is the "real target" of the overall action (internal quotation marks omitted)); *Madison v. ADT, L.L.C.*, 11 F.4th 325, 328 (5th Cir. 2021) (employing similar reasoning to identify the "primary thrust" of the suit).

Reasonable minds may differ on the best synonym for "primary." We see the controlling inquiry as one requiring an assessment of the plaintiff's complaint as a whole—its factual allegations, claims, and requests for relief—with an eye toward examining whether the defendant in question is a principal focus of the class action. The Third Circuit has charted a similar approach, explaining that the factors most informing the analysis will often be whether the defendant in question is directly liable to the proposed class, how many class members are purportedly impacted by the defendant's alleged actions, and the amount the defendant may lose if found liable. See *Vodenichar*, 733 F.3d at 504–05; see also *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1162 (11th Cir. 2021) (applying similar factors).

In this case, we have little difficulty seeing the spotlight of the plaintiffs' complaint as shining foremost on Country Mutual. The company is the named defendant in three of the complaint's four claims and the party alleged to have accumulated over $3.5 billion in excess surplus. No doubt Country Mutual is the deepest pocket in the case, and surely the party from which the plaintiffs seek the lion's share of any recovery.

To be sure, those observations do not make Country Mutual the only "primary defendant," for we readily accept that more than one defendant or indeed every named defendant can fit within that category in a particular case. Our only point

is that an objective reading of the complaint leaves us persuaded that the 46 directors and officers do not stand as equal defendants alongside Country Mutual when considering the plain objective of this class action—to exact a material financial recovery of billions of dollars of surplus alleged to be wrongfully withheld by a mutual insurance company from distribution to policyholder members.

The same considerations lead us to conclude that Robert Bateman is not a primary defendant. The complaint identifies him as the company's chief financial officer for two years of the decade-long surplus accumulation, but it does not otherwise say much about him. In the few places his name even appears in the plaintiffs' 48-page complaint, Mr. Bateman is but one of 46 undifferentiated directors and officers. There is no allegation, for example, that Mr. Bateman played a particular or significant role in the alleged accumulation of excess surplus. In these circumstances, and even accepting the plaintiffs' overall allegations that the surplus accumulation occurred to enrich Country Mutual's directors and officers, we cannot conclude that Mr. Bateman is a primary defendant within the meaning of CAFA's home-state controversy exception.

*   *   *

Because this case fits within the internal-affairs exception and the home-state controversy exception, we REVERSE the district court's denial of the plaintiffs' motion to remand, and REMAND to the district court with instructions to remand the case to state court.